RICHARD BEIN AND MARY, HIS WIFE, APPELLANTS, *v.* MARY HEATH.

The Civil Code of Louisiana (article 2412) enacts, that " the wife, whether separated in property by contract or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage."

Where a wife mortgaged her property to raise money, and the question did not turn upon her doing so as the surety of her husband, it was not necessary for the lender to prove that the proceeds of the loan inured to her separate use.

The fact of the application of the money may be proved to show the character of the transaction, with a view of establishing collusion or fraud.

The decisions of the State courts of Louisiana upon this subject examined.

Where a wife mortgaged her property, and then sought relief in chancery upon the ground that the contract was void in consequence of her disability to contract, and it was shown that the lender acted in good faith ; proceeded cautiously under legal advice, under assurances that the loan was for the exclusive use of the wife, to whom the money was actually paid ; the interest upon the loan paid for several years ; the mortgaged property insured by her, and the policy assigned to the mortgagee ;—a bill to relieve her from the contract cannot receive the sanction of a court of equity.

But it is no objection to such a bill, as a rule of pleading, that the husband is made a party to it with the wife. He acts only as her *prochein ami.*

THIS was an appeal from the Circuit Court of the United States for the Eastern District of Louisiana, sitting as a court of chancery.

The facts are sufficiently set forth in the opinion of the court.

It was argued by *Mr. Crittenden* and *Mr. Johnson*, for the appellants, and *Mr. Bradley* and *Mr. Jones*, for the appellee. There were also printed briefs for the appellee filed by *Mr. Eustis* and by *Messrs. Elmore* and *King*.

*Mr. Crittenden*, for the appellants, stated the substance of the case as follows.

The bill in this case was filed by the appellants, Bein and wife, to enjoin proceedings under a writ of seizure and sale

taken out by the appellee, Mary Heath, to sell certain property of the appellant, Mary Bein, under a mortgage from the latter, dated the 8th May, 1838, to secure two notes drawn by her in favor of her husband, and by him indorsed, — the one for $ 10,711.71, the other for $ 535.59.

The complainants allege that these notes were given for a loan obtained by Richard Bein, the husband, for his own use, and which was so applied; and that in such a case, by the laws of Louisiana, the mortgage of the wife, and her promise to pay the debt, or to make her property responsible, is not binding, but void.

The answer of the appellee denies the averment of the bill as to the purpose of the loan, or the use of the money; and evidence was taken on both sides.

And then he contended; —

1st. That the loan was for the exclusive use of the husband, and that it was so applied.

2d. That being for such use, and so applied, the notes and mortgage were void as against the wife, and her property; and that, consequently, the injunction prayed by the bill should have been made perpetual.

Upon the first point, *Mr. Crittenden* said, that Mrs. Bein was a widow when she married Bein, that she was worth $ 85,000 and free from debt. Her revenue was ample, as she had only two or three children. Bein was a merchant and speculator, in fact insolvent at the time of the loan, although apparently engaged in business. Soon afterwards he became openly an insolvent, and divided little amongst his creditors. In May, 1838, when the loan was made, the witnesses say he could not raise money upon his own responsibility. For whom is it likely, then, that the loan was made. The husband was surrounded with unpaid bills and pecuniary embarrassments of every description. The question is for whom the money was borrowed, and that is the only question under the Louisiana law. We do not find in the record that the wife wanted money. On the contrary, the husband was pressing Heath for the money. A lawyer was consulted, who said the loan must be made to the wife, and an effort was made to give the affair that semblance. Hence the interlineation in the mortgage. Can these written papers prevent the wife from shewing the truth of the transaction? Bein paid to one person $ 4,000 in that same month of May, and also paid other people. But he had no means to pay them with except this loan. He owed Sherman & Co. a debt, which he paid. Not a dollar went to the benefit of the wife. But according to the forms of the transaction, she received the money. It was paid by a check

to her, which was placed in her own hands. What is the law of Louisiana in such a case? (*Mr. Crittenden* then cited the article 2412 of the Civil Code, and all the State authorities set forth in the opinion of the court, upon which he commented.)

*Mr. Bradley*, for the appellee, made the following points: —

1. The loan was made to the wife.

2. She could borrow money and mortgage her property; or,

3. If not loaned to her, it was a fraud practised by the complainants on the defendant.

4. In either case she can have no relief in equity, and there is no error in the decree rendered by the Circuit Court; and,

5. This is a bill by husband and wife, respecting her *separate* property, in which he is indirectly charged with seeking to injure her. Their interests are adverse. It is his suit. They are improperly joined. Advantage of this can be taken at the hearing, and the bill must be dismissed.

The marriage contract shows that the wife had power to contract. Having this power, she admits that she made this contract in the most formal manner known to the laws, holding out the idea that the loan was for her benefit. We do not say that she can be a surety for her husband. The court ought to protect her in her rights, but there are also other persons to be protected, who were dealing fairly in the transaction. Can she now say, that she led the other party into a snare, and that this other party must show that the money was actually expended for her sole benefit? The question is, Upon whom is the burden of proof? We say that the complainants must show that the money did not, in fact, go to her use. We have her declaration before the notary that it was so. In none of the cases which have been cited can such a formal admission be found. The books and payments of the husband cannot be admitted to contradict this notarial act of the wife. Civil Code, art. 2233 – 2235; 8 Martin, N. S. 693, 694; 10 Martin, 439.

The letters of Heath show that he thought he was making the loan to the wife. These letters were ruled out below, but exceptions were taken. Starkie, Ev. 57, 62 – 64; Story, Agency, §§ 131, 135.

The declaration of the husband was to the same effect, and he could act for his wife. Civil Code, art. 2330 – 2333. In this case he was her proper agent. Ibid., art. 2340, 2362, 2363; 2 Rob. 20; 11 La. Rep. 258; 7 Martin, N. S. 144.

There was collusion and fraud between the husband and wife to cheat Heath. Civil Code, art. 1841, defines fraud. 1 Story's Eq. 384, 385.

Bein et al. - Heath.

If the other side are right in saying that the lender must look to the manner in which the money is spent, then all married women, under such circumstances, would be placed under the supervision of trustees who might be strangers. She was not a surety for her husband, because he owed us nothing. After borrowing the money, if she chose to lend it to him, she brought herself within the provision of the civil law. Ulpian, book 16, tit. 1.

Bein was insolvent in 1840, two years after the loan was made. But the interest was paid for four years afterwards.

In the admission of facts upon the record is this : —

"It is also admitted that the first four years' interest on the loan was regularly paid, and that for that time the policy of insurance on the house mortgaged to secure the loan was regularly assigned, in conformity with the contract of loan.

(Signed,)        R. HEATH,
                 R. HUNT, *Complt's sol.*
(Signed,)        ELMORE & KING,
                 *Att'ys for Respondents.*"

Who paid the interest all this time ? The policy, too, was made out in the name of the wife, and indorsed by her. She was returned, also, as a creditor in her husband's schedule. She must, therefore, have been acquainted with the whole affair.

But it has been said that the decisions in Louisiana require that we should have seen that the money was expended for the wife's separate use. (*Mr. Bradley* here critically examined these authorities.)

In point of fact, although we are not bound to show it, the record does prove that the money was actually used for her benefit. On the 29th of May, seventeen days after the money was borrowed, Bein paid $5,500 on account of an elder mortgage, which secured a debt of $15,000 due to the wife.

On the 5th point of the brief, the misjoinder of parties, *Mr. Bradley* cited 1 Sim. & Stu. 185 ; 2 ib. 464 ; 2 Keen, 59, 70 —72 ; 5 Simons, 551 — 553.

*Messrs. Elmore & King* filed the following analysis of the Louisiana authorities.

Darnford *v.* Gros and Wife, 7 Martin, 489. — Decided under the law of Toro.

Lombard *v.* Guillett and Wife, 11 Martin, 453. — In this case, there was no proof that the husband authorized the wife to sign the note with him, nor did she sign the act of mortgage, although it was given by the husband, upon her property.

Banks *v.* Trudean, 2 New Series, 39. — In this case, the wife was admitted and proved to be surety for her husband. The case was decided upon the law of Toro. (Wife might bind herself with the husband, provided she renounced the law of Toro.)

Perry *v.* Gerbeau and Wife, 5 New Series, 19. — In this case, the wife was surety.

Sprigg *v.* Bossier, 5 New Series, 54. — The note sued on was given for property purchased by the husband, and she was surety merely.

McMickem *v.* Smith and Wife, 5 New Series, 431. — The note sued on was given in part for negroes sold to the husband, and in part for a balance then due by him on another obligation to plaintiff.

Hughes *v.* Harrison, 7 New Series, 251. — The note sued on was given " for their and plantation use." The wife was surety merely for her husband, for part of the debt. The case was remanded, to enable the plaintiff to prove how much was for the wife's use and benefit.

Brandegee *v.* Kerr and Wife, 7 New Series, 64. — This action, although decided in the year 1828, was brought on a note for $1,800, dated August 31st, 1821, and due three years after date. This I know, from having examined the record in the Supreme Court. The case was consequently decided under the law of Toro, which had not been repealed before the execution of the note. The court say the husband and wife were bound jointly and severally. This made the case fall completely within the law of Toro. There was no evidence that the note was given for the wife's benefit. Upon this the court lays great emphasis, and upon it, in fact, decides the case. The court decided, that the circumstance that she received the money was not sufficient evidence that it was for her separate use and benefit. As the law then stood, the wife was not bound at all on the contract or note; it was a nullity on the face of it. She was only bound for what was used for her separate benefit, upon a *quantum meruit.* Her receiving the money did not at all prove that the note was made for her separate use, or that the money was applied to her separate use.

By our law, as it now stands since the repeal of the law of Toro, there is no impropriety in a wife binding herself conjointly with her husband, provided it be not for a debt contracted by him. A husband may be surety for the wife for debts contracted for her separate benefit, and he may be bound jointly with her for such a debt. The prohibition of article 2412 does not extend, as it did under the law of Toro, to the form of the instrument, but only to a joint contract for the husband's debt.

To determine, then, whether a contract falls within the pro- hibition of that article 2412, two things have first to be ascertained.

First.. Whether the wife has bound herself for her husband, or as his surety ; and,

Second. Whether the debt was contracted by him before or during the marriage. Both of these conditions are absolutely necessary, to bring any case within the prohibition of that article.

It will be seen from the above, that the law under which the case of Brandegee *v.* Kerr and Wife was decided was very different from the law as it now stands. The facts differed still more widely from the case before the court. In the case of Brandegee *v.* Kerr and Wife, there was no evidence that the contract was the wife's; there was no notarial act showing this. As the law then stood, the check being given to her was not sufficient evidence of this. In our case, the evidence is conclusive that the original contract was made by the wife. The note and mortgage were not given for a debt of the husband, but of the wife.

Pilie *v.* Patin et al., 8 New Series, 693. — In this case, the wife was clearly shown to have been surety merely for her husband, for a preëxisting debt due to the plaintiff, and at his solicitation gave a mortgage, in which the facts were purposely misrepresented to evade the law. This was clearly proved.

The plaintiff was a party to the whole transaction. In the case before the court, Sherman Heath believed the loan was really made for the benefit of Mrs. Bein, and that the representations enumerated in the act were true.

Guasquet *v.* Dimitry, 9 Louisiana, 585. — This case was widely different, in all its features, from the case before the court. The court decided that a renunciation made by the wife was done for the benefit of the husband, and that the act was prohibited by art. 2412, Civil Code ; that the wife was, in fact, surety for her husband.

Davidson *v.* Stuart et al., 10 Louisiana, 146. — In this case, the court decided, that, although the land for which the note was given was purchased in the name of the wife, yet still it was community property.

Being community property, the husband had as much right to sell or otherwise dispose of it as if it were in his own name ; consequently, the price due for it was a debt of the husband's.

Firemen's Insurance Company *v.* Cross and Wife, 4 Robinson, 509. — In this case, the court say that the money was borrowed for the husband's benefit, that the wife never received a dollar of it, and that the plaintiffs were aware of these facts.

20 *

It will at once be perceived that the case differed widely from our case, where there is not a particle of evidence showing that Sherman Heath knew this money was borrowed for Bein's benefit. On the contrary, the evidence shows that he believed it was for Mrs. Bein's benefit.

Maddox *v.* Maddox, Ex., 12 Louisiana, 14; Martin *v.* Esther Drake, 1 Robinson, 219; Petit Pain *v.* Therese Palmer, 1 Robinson, 220. — In these cases no principle was decided different from that decided in the others above cited; and they are relied on by the defendant to show that it must be proved by the evidence whether the loan was made to the husband or the wife.

It is proper to give the views of *Mr. Eustis*, also, upon this subject, who filed a printed brief, as has been already stated. The following is an extract from that brief.

Some confusion exists in the decisions of the Supreme Court of Louisiana which have been made under the dominion of the Spanish laws. These laws have since been abrogated. They, however, require some explanation, so far as this subject is concerned.

The 61st law of Toro provided: — "From henceforth it shall not be lawful for the wife to bind herself as security for her husband, although it be alleged that the debt was converted to her benefit; and we do also order, that when the husband and wife shall obligate themselves jointly in one contract, or severally, the wife shall not be bound in any thing, unless it shall be proved that the debt was converted to her benefit, and then she shall be bound in proportion to what shall have been so applied." 7 Martin, 489; Novissima Recopilacion, 10, 11, 3.

By the laws of Spain, the wife could bind herself jointly and severally with her husband, provided she renounced this law, in which case (of renunciation), to render her liable, it was not necessary to prove that the debt inured to her benefit. Banks *v.* Trudeau, 2 Martin, N. S. 40.

Wives were not bound by agreements entered into jointly, or jointly and severally, with their husbands, unless it be shown that they have renounced those laws made for their protection, or that the contract has been profitable to them. Perry *v.* Grebeau et ux., 5 Martin, N. S. 19.

In the case of Darnford *v.* Gros and Wife, cited 7 Martin, 489, the court held that this law of Toro was not repealed by the Civil Code of 1809, which contained no repealing clause, and no provision incompatible with this law.

But the Civil Code of 1825, which is now in force, contained a general repealing clause (art. 3521), which abrogated the

Spanish laws, and among the rest this law of Toro. A subsequent statute destroyed every vestige of the Spanish laws, that is, the laws as contradistinguished from the jurisprudence. The Civil Code, which repealed this provision of the law of Toro, reënacted it, but without the exception concerning the burden of proof; thus, in article 2412, it is provided, that the wife, whether separated in property from her husband or not, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage. That is, in other words, the wife cannot be the surety of the husband.

The effect of the repeal of the law of Toro would undoubtedly leave the wife entirely at liberty to charge her separate estate, except as prohibited in the article 2412, and in all cases the proof would rest upon the general principles of the law of evidence.

The Supreme Court of Louisiana have never considered or adjudicated on this subject of the repeal of the law of Toro; it was never presented by counsel in the different cases cited by the defendant's counsel.

The cases antecedent to and including that of Brandegee *v.* Kerr and Wife (7 Martin, N. S. 64) were all decided under the law of Toro. This case, though decided in 1828, was on a note dated the 31st of August, 1821, and consequently regulated as to its obligations by the law under which it was made.

If we look back to the reason and origin of these laws which prohibit women from contracting, it will be found that they were made for the purpose of preventing the weakness and good faith of women from being surprised, but were never held to reach a case where any indirection or equivocation of conduct should be apparent; still less, one in which the exemption of the woman from responsibility would produce the grossest injustice. Such was the sense of the Roman laws on this subject, and such has been their interpretation, in modern times, in those countries in which the Roman jurisprudence is adopted.

Merlin says expressly, that if the wife make use of any deceit or fraud, the privilege of the *senatus velleianum* is denied to her, which is intended to protect good faith, and can never be made to cover any obliquity of conduct. Merlin, Rep. de Jurisprudence, vol. 30, p. 349; verbo, *senatus consultum Vellein.*

The decisions relied upon by the complainants are believed to turn upon the question of fact, whether the debt was or not that of the husband. If it was the husband's debt, the wife

could not bind herself to pay it. The article of the Code is positive. But if the debt was hers, there is a valid obligation on her part to pay it out of her separate estate.

In Louisiana, the law considers marriage, so far as relates to property, as a civil contract only. Civil Code, tit. 4, art. 87.

Parties may regulate their rights as to property, during marriage, as they please, provided certain rules of public policy are not violated thereby. Civil Code, art. 2305.

The wife is under no disability of contracting with the consent of her husband. Civil Code, art. 124.

The matrimonial conventions of the parties must be made before marriage; but the husband, during marriage, may convey to the wife property to replace that which may have been alienated by him, as was done in this case. Record, pp. 43, 44.

By the Roman law, no effect was produced by marriage on the property of the parties which they possessed at the time of marriage, unless the contrary was provided by an express stipulation. Institutes of the Roman Law, by Mackeldey, § 516.

There was no fictitious confusion of persons produced by marriage; it was an institution which raised the wife to the rank of the husband, and rendered her children legitimate. Ibid. 515.

The dotal property was transferred to the husband, but that which was not so transferred remained under her absolute and unlimited control. Ibid. 517, 529.

Here, then, we have a party, laboring under no disability whatever, who has made a contract. Is this contract within the prohibition of article 2412? Did she bind herself for her husband's debt, or for her own? Like every other question of fact, this must be solved by the evidence. So far as the complainant is concerned, it is obvious that she and her agent loaned the money, in good faith, to Mrs. Bein, and not to her husband. Her husband was insolvent at the time; who, therefore, would lend him money? We find part of the money loaned applied to the extinguishment of an encumbrance of an estate, which, for all the purposes of this inquiry, must be considered as hers.

On the 12th of June, 1838, in the act of transfer of the Nayades Street property from her husband, the Hobson mortgage for $15,000 is mentioned as existing on the property, which the husband binds himself to have released. The application of part of the money borrowed from the complainant to the extinguishment of this mortgage is proved by the concurrent testimony of several witnesses. Sewell and Wife v. Cox, MS. case.

In the embarrassed and complicated state of the affairs of the husband, it is in the power of no one but himself to trace with certainty the result of any single payment, so as to ascertain who was, or who was not, ultimately benefited by it. But that this was the debt of his wife, and not his, and that by no use of the money on his part did either the complainant or his wife become his creditor, we have his solemn oath, made under the penalties of the bankrupt act.

We have the declarations and the acts of the parties themselves, coincident with their respective obligations, which, in a matter of equity, is surely conclusive in a case where no duress or deception is even alleged.

*Mr. Johnson*, for the appellants, in reply and conclusion.

The case divides itself into the following points : —

1st. For whom was the loan made, and to whose benefit did it inure ? Not *to* whom it was made, but *for* whom. This is a question of fact.

2d. Whether, if made for the husband, and inuring to his benefit, the contract is void. This is a question of law.

This latter point gives rise to the two following subdivisions : —

1. On which party the *onus probandi* rests to show the nature of the loan. And,

2. If that *onus* is on the wife, whether she has not sufficiently shown that it did not inure to her benefit.

1st. For whom was the loan made? Many facts in the case are not disputed. One of them is, that from the middle of 1837, to May, 1838, the husband was insolvent and unable to borrow. The answer says that Heath would not have loaned the money to him. When Bein became openly insolvent, he had no assets. It is a fact, also, which cannot be disputed, that the record does not show a single word to have passed between the wife and the lender, or between the wife and Smith the attorney. She never spoke at all except through the mortgage. Smith says he warned Heath, but it does not appear that he cautioned Mrs. Bein, or informed her of her rights. Mr. Bein was brought to the office, and he said every thing that was said. What became of the money? If it is found in the hands of the husband, it is a proof that it was obtained for his benefit. It is surprising that the opposite counsel have referred to Bein's schedule when he became insolvent, because it shows that he received every cent of the money. The amount of the loan was $10,711.71. In the schedule is the following : —

Bein et al. *v.* Heath.

| Names of creditors. | Residence. — Nature of debt. | Amounts. | | Remarks. |
|---|---|---|---|---|
| Mrs. Mary Bein | New Orleans, — for amo't rec'd from sale of house, Canal Street. | $ 18,785.00 | | |
| | Am't rec'd from sale lot, Union Street | 6,950.00 | | |
| | Amo't of money rec'd | 10,711.71 | $ 36,446.71 | |
| Cr. | By amount refunded by sale of house on Nayades Street | 26,000.00 | | |
| | Less her assumption of bond to Bank of Louisiana | 10,000.00 | | |
| | | 16,000.00 | | |
| | Am't of R. A. Martin's draft | 654.13 | | |
| | " of O. Osborne's note | 233.22 | | |
| | " M. Connoher's account | 118.00 | | |
| | " James Varin's do. | 35.00 | 17,040.35 | |
| | Balance due Mrs. Bein | 19,406.36 | | |

The amount of money received by him from Mrs. Bein, being exactly that of the loan, shows that it was the same money. Moreover, the counsel upon the opposite side put the following cross-interrogatory to the brother of Mr. Bein.

" Cross-interrogatory 8th. Have you never known Richard Bein to represent that this money was borrowed from some one else than the person you have named? If yea, from whom did he represent that it was borrowed? "

To which the witness answered : —

" 8th. To the eighth he answers, that he never knew said Richard to represent said money, or any money, as borrowed at that time, May, 1838, from any one else· than from Sherman Heath."

The counsel on the other side have made this answer evidence.

(*Mr. Johnson* then entered into arithmetical calculations, from parts of the record, to show that this money was totally lost to Mrs. Bein.)

2d. Is not such a contract void by the laws of Louisiana in force after the repeal of the law of Toro? The policy of these laws is evident. They are not to protect the wife against strangers, with whom she might contract, but against the arts of the husband, against his fraud or force. He might induce her to contract in her own name, and this is what the law intended to prevent. A similar principle prevails in other States, where a private examination of the wife is required. But the laws of Louisiana intended to strike deeper and to prevent the evil by avoiding the contract altogether. The substance of the law of Toro is preserved. It is made the duty of the lender to see where the money goes. 7 Martin, 489. Both

laws make the illegality of the contract depend upon the application of the money. If this construction is not given to the present law. of Louisiana, the protection thrown around married women is destroyed altogether, because the husband may induce them to assume any form of contract.

(*Mr. Johnson* here entered into a critical examination of the Louisiana cases, to show that they made the contract stand or fall by the fact, to whose benefit the loan inured.)

Upon the point whether there was a misjoinder in the bill, *Mr. Johnson* read and remarked upon the cases in 1 Sim. & Stu. 185; 2 ib. 464; 2 Keen, 59, 70; where the whole practice of the court is stated.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal from the Circuit Court for the Eastern District of Louisiana.

The bill was filed by the appellants, Bein and wife, to enjoin proceedings under a writ of seizure and sale taken out by the appellee, Mary Heath, to sell certain property of the appellant, Mary Bein, under a mortgage from the latter, dated 8th of May, 1838, to secure two notes drawn by her in favor of her husband, and by him indorsed, — the one for $10,711.71, the other for $535.50.

These notes, the complainants allege, were given for a loan obtained by Richard Bein, the husband, for his own use, and which was so applied; and that in such a case, by the laws of Louisiana, the mortgage of the wife, and her promise to pay the debt, or to make her property responsible, is not binding, but void.

The answer of the appellee denies the averment of the bill, as to the purpose of the loan or the use of the money.

It is objected, that, the suit being brought in the name of the husband and wife, it must be considered the suit of the husband; and that a decree would not bind the wife.

On looking into the bill, it appears that the name of the husband is used only as the *prochein ami* of his wife. He asks no relief. The wife prays an injunction against the sale of the mortgaged property, and a rescission of the mortgage and notes, and a release from all liability thereon. The bill was sworn to by the wife, and a rule was entered on the attorneys of the defendant, to show cause why the injunction should not be granted in favor of Mary Bein, and at a subsequent day the writ was granted. An injunction bond was given by the wife, with security, the name of the husband being used only as authorizing the wife to execute the bond. And so throughout the proceedings the wife is treated as the party in interest, the name of the husband being formally used.

Where the wife complains of the husband, and asks relief against him, she must use the name of some other person in prosecuting the suit; but where the acts of the husband are not complained of, he would seem to be the most suitable person to unite with her in the suit. This is a matter of practice, within the discretion of the court. It is sanctioned in the 63d section of Story's Equity Pleadings, and by Fonblanque. The modern practice in England has adopted a different course, by writing the name of the wife with a person other than her husband, in certain cases. From the frame of the bill, no doubt is entertained that the decree will bind the wife.

Prior to the marriage of Bein and wife, they entered into a marriage contract, in which it was stipulated that neither should be liable for the debts of the other; and each reserved the right of selling and disposing of their property, after marriage, as they might deem proper, with the consent of the other. The wife brought into the marriage, and settled upon herself, as stated, property, real and personal, estimated to be worth eighty-eight thousand six hundred and thirty-five dollars. This contract was entered into in accordance with the Louisiana law.

The loan was negotiated on the 8th of May, 1838, at which time it is proved that Richard Bein was known to be much embarrassed, and, as it appears in proof subsequently, was actually insolvent. In the act of mortgage Mrs. Bein declared that she was justly indebted unto Sherman Heath in the full sum of ten thousand seven hundred and eleven dollars and seventy-one cents, being a loan of money made to her, and for her sole benefit, &c. This act had all the sanctions required by law. On the 10th of the same month, a check, payable to Mrs. Mary Bein, or order, for the above sum, was drawn by S. Heath & Co. on "The Citizens' Bank of Louisiana," and handed to Mrs. Bein.

It appears that Heath had knowledge of the embarrassments of Bein, and consulted with J. W. Smith, a lawyer, who is a witness, how the loan could be legally made. He was informed that it must be made for the sole benefit and use of the wife, and that the husband should not be interested in or benefited by it. Heath stated that the money belonged to his mother, and he did not wish to receive more than the legal interest, for fear of difficulty; and that he had rather loan the money to Mrs. Bein, believing it to be safe, than to let other persons have it at higher rates. Afterwards, Heath and Bein being present, the witness stated to them that the loan would not be legal unless it was for Mrs. Bein's sole use and benefit; "that no loan could be made legally to him under cover of a

loan to his wife, and that it must be a *bonâ fide* contract with Mrs. Bein." Bein then, in the most positive manner, informed Heath that the proposed loan was a real *bonâ fide* loan to Mrs. Bein, that there was no cover or concealment about it. Witness examined the act of mortgage, and filled up the check and handed it to the notary.

For nearly five years Mrs. Bein paid the interest on the loan, kept the property insured, and assigned the policy annually.

On the 2d of April, 1840, Richard Bein filed his petition for the benefit of the insolvent act, attached to which was a schedule of his debts; and among others, a debt due to his wife for the same amount above loaned to her. It appears that Bein paid several debts of large amounts shortly after the loan was negotiated; but, independently of his own statements, there is no positive evidence that these payments were made with the money loaned.

The article 2412 of the Civil Code of Louisiana declares, — "The wife, whether separated in property by contract or by judgment, or not separated, cannot bind herself for her husband, nor conjointly with him, for debts contracted by him before or during the marriage."

Under this law, a mortgage given by the wife to secure a loan made to the husband, or to the wife covertly for his use, is void. As the loan in question was made to the wife, which appears from the mortgage and the check for the money, a question in the case is, whether these forms were adopted to charge the wife, in fraud of the law, for the benefit of the husband.

No fraud or mistake is alleged in the bill. The complainant states that the loan was made by her husband for his benefit, that she became his surety in violation of the law of Louisiana, and was induced, contrary to her wish, to mortgage her property for the payment of the money. On these grounds, the court are asked to declare the mortgage void.

If this bill be sustainable, it must be on the peculiar provisions of the Louisiana law. In ordinary cases it would be demurrable. Where a feme covert, by the forms of law, has conveyed her property, she can avoid the effect of such conveyance only by showing mistake or fraud. And this must be alleged in the bill. On ordinary principles, an individual is estopped from denying a fact which he has admitted in a sealed instrument.

In making the loan, Heath acted with great caution. He was agent for his mother. He proceeded under legal advice, and consummated the agreement in the presence of his counsel. Bein was known to be irresponsible; consequently Heath

did not rely upon him for payment. The acts of Heath in negotiating the contract, and the account he gave of it, all show that he acted in good faith, and in full confidence that the loan was made to Mrs. Bein. The mortgage was executed by her, under the most solemn declaration "that the money was borrowed for her benefit," — her attention being specially directed to the clause of the mortgage which so declares, as appears from a marginal note, — sanctioned by the notary, and signed also by other persons. And the check for the money was paid to the mortgagor.

From these facts, it is clear that Heath is not chargeable with collusion. And there is nothing on the face of the contract to excite suspicion. On such a transaction, the mortgagee may well stand and claim the benefit of the security until it shall be impeached by the mortgagor. This is attempted to be done, not by proof of fraud or mistake, but on the ground that the loan did inure to the benefit of the husband, and not to the benefit of the wife. This is a matter subsequent to the contract, and involves the inquiry, whether the person making a loan, with the utmost fairness and caution, to the wife, must, to charge her, see that the money is applied to her use.

The article, which declares that the wife cannot become the surety of her husband, does not superadd the above important condition as to the application of the money. It is not in the law, unless it shall have been put there by judicial legislation. The fact, that the money borrowed was paid to the husband or was used for his benefit, as a matter of evidence, may be proved to show the character of the transaction. And, connected with other facts, it may conduce to establish collusion or fraud. But to treat this supposed requisite as a matter of law, under the above article, would violate every known rule of construction. With this general remark, we will examine the Louisiana decisions on this point.

The case of Brandegee *v.* Kerr and Wife, 7 Martin, N. S. 64, in facts and principle is said to be similar to the one under consideration. That was an "action on the note of the wife indorsed by the husband, alleged to have been received from the wife on a loan made to her by a check delivered to her." And the court say, "that the circumstance of the wife having a separate advantage in the contract, being of the essence of her obligation, must be proven by some other evidence than proof of her having touched the money." And in conclusion they say, — "Being of opinion that there is no fact in evidence from which it is possible to infer that the plaintiff's money was employed for the separate use of the wife," &c., "we conclude that the wife is not bound." The court also say, — "We cannot dis-

tinguish this paper from a note joint and several of husband and wife, for they are bound jointly and severally, and the plaintiff has prayed for a judgment joint and several."

It must be admitted, that the court, in the above case, consider proof of the application of the money to the use of the wife as essential to bind her. And unless that case, in its facts or the law under which it was decided, shall be shown to differ from the facts and law of the case under consideration, it will constitute a rule of decision in this case.

If this action were on the notes given by Mrs. Bein and indorsed by her husband, in that respect, and also in the payment of the money to the wife, the cases would be similar. But in the case before us, the action is on the mortgage, in which there is no liability of the husband, and no decree is asked against him. It is true, notes were given similar to that given in the case cited, but the notes of Mrs. Bein, though indorsed by her husband, must be considered as connected with the mortgage, which explains the nature of the transaction. And in addition to this, there is evidence that the contract was made with Mrs. Bein, under the strongest assurance that the loan was made for her sole benefit, and under a full conviction by Heath that it was so made. In these important particulars, there is a difference between the cases. The case cited seems to have rested on the face of the note and the check.

But still the ground, as to the application of the money, remains unanswered.

In the above decision, the case of Darnford *v.* Gros and Wife, 7 Martin, 465, is cited, and it is the only authority referred to in the opinion of the court. The decision in that case was founded on the 61st law of Toro. It is cited by the court as follows : — " From henceforward, it shall not be lawful for the wife to bind herself as security for her husband, although it should be alleged that the debt was converted to her benefit ; and we do also order, that when the husband and wife shall obligate themselves jointly in one contract, or severally, the wife shall not be bound in any thing, unless it shall be proved that the debt was converted to her benefit, and she shall then be bound in proportion to what shall have been so applied." " But if the debt so applied to her use served only to procure that which her husband was obliged to supply her with, such as food, clothing, and other necessaries, then we say that she shall not be bound in any thing."

The above action was founded on a promissory note subscribed by the wife conjointly with her husband. And the court say, " that the restriction imposed by the Spanish laws on the obligations contracted by the wife jointly with her hus-

band has not ceased to be in force, and that, according. to it, when the creditor wishes to compel her to the performance of such an obligation, he must prove that the debt was converted to her benefit."

The law of Toro was repealed, with all other Roman, Spanish, and French laws in Louisiana, in every case provided for in the Civil Code by article 3521. The Civil Code was adopted in 1825. But as the case first cited, of Brandegee *v.* Kerr and Wife, was decided in 1828, after the repeal of the law of Toro, it is contended that the decision could not have been governed by that law. But it seems, from the statement of one of the counsel, that the contract was made under that law. The reference to the case of Darnford *v.* Gros and Wife shows, as above stated, that the decision against Kerr and wife was made under the law of Toro. This appears clearly from the language of the court.

Great reliance is placed on the case of The Fireman's Company *v.* Julia Louisa Cross, 4 Robinson, 509. That action was instituted on a promissory note for $7,000, drawn by the defendant, and secured by mortgage on her paraphernal property. It was proved "that no portion of the money loaned was ever paid to the defendant, but that it was paid by the plaintiffs to different persons on orders given by the husband."

The facts in that case show that the wife was the surety of the husband. And the court very properly held, that such proof was admissible, although in the mortgage the wife stated the loan was made to her. Article 2256 declares, "that parol evidence shall not be admitted against or beyond what is contained in the acts," &c. But this was held not to apply to contracts made *in fraudem legis.*

In their opinion the court say, — "We are satisfied that the money borrowed was intended for, and was applied to the use of, the defendant's husband." "This case," they observe, "is much stronger than that of Brandegee *v.* Kerr and Wife, in which it appeared that the wife had actually received the money, but there was no proof of its having turned to her separate advantage."

The citation of the case against Kerr and wife is a seeming sanction of the ground on which that case was decided. But the case before the court did not turn upon the application of the loan, as it was clear that the husband received the money, and applied it, by orders on the plaintiffs, to the payment of his own debts. This shows the intent with which the loan was made, and also that the facts were known to the plaintiffs. The reference seems to have been made to the case of Kerr and wife generally, without adverting to the law under which it was decided.

Of the same character was the case of Pascal *v.* Sanvinet et al., decided in 1846, and reported in manuscript.

The husband and wife, by a decree, were separated in property, after which she delegated to him extensive and general powers for the management and administration of her affairs. Two years after this, the husband, under this power, executed the notes and mortgage in question, "stating in the act that the sum was due by his wife, in consequence of a loan made to her by the defendant, and which he, as her agent, acknowledged to have received." And the court say, — "There is no proof that any part of this loan passed into the hands of the plaintiff, or that it was applied or turned to her benefit. She was not personally present at the execution of the act, and is not shown to have been aware that the loan had been made or the mortgage granted." -

From these facts, there would seem to have been no mode by which the wife could be bound, except by showing that the money was applied to her use. This, on being shown, would, it is supposed, have confirmed the agency. It would have established the *bonâ fide* character of the act done by the husband. As a matter of evidence, then, to explain the nature of the transaction, proof that the loan accrued to the benefit of the wife was necessary to bind her.

It must be admitted, that the general language of the court covers the ground assumed by the counsel for the appellant. They say, — "It has been settled, by repeated decisions of the late Supreme Court, that it is incumbent on the party claiming to enforce the contract of a married woman to show that the contract inured to her separate advantage." And they cite the case of Brandegee *v.* Kerr and Wife, and repeat, "that the circumstance of the wife having a separate advantage in the contract, being of the essence of her obligation, must be proved."

In answer to these remarks, it may be said, that the case turned upon the suretyship of the wife, and not upon the application of the money. The act was done by the husband without the knowledge of the wife, which shows that it was done for his benefit.

It was held, 2 Martin, N. S. 39, that the wife may bind herself jointly and severally with her husband, provided she renounces the law of Toro in due form. And that, when this is done, the creditor need not prove that the engagement turned to her advantage. But she cannot bind herself as surety for her husband, not even by binding herself *in solido* with him. That decision was made in 1823.

In Gasquet et al. *v.* Dimitry, 9 Louisiana, 585, it was held, "where the wife signs an act of mortgage with her husband,

given to secure a debt for his benefit, in which she renounces formally all her rights, privileges, and mortgages on the property, ceding and transferring them to her husband's creditor, was a contract entered into by the wife conjointly with her husband, binding herself for his debt, which, being prohibited by article 2412, was void."

The court in their opinion say, — "The counsel for the appellant, in support of the position, that the agreement on the part of the wife to renounce her claims on the mortgaged property is null and void, relies upon article 2412." After citing the article, they observe, — "The question thus presented is to be decided by us without reference to the laws of Toro, which have no longer here the force of laws, and independently of former decisions of this court while guided by the Spanish jurisprudence; but we are called on to say what, in our opinion, is the law of the land on this subject, as established by the code standing by itself."

On a rehearing of the above case, the court held that the wife was the surety of the husband, within "the sense of article 2412, and that the act was consequently void." And it appears that the legislature, being dissatisfied with the decision, passed an act declaring "that married women aged twenty-one years shall have the right to renounce, in favor of third persons, dotal, paraphernal, and other rights," in a certain form, &c.

In the case of E. Monfort *v.* Her Husband, 4 Robinson, 453, it was held, "that the purchaser of dotal property, legally alienated, has nothing to do with the investment of the proceeds, and that the husband alone has the administration of the dowry. If he misapplies it, there is a lien of the wife on his property."

The law of Toro declared, — "The wife shall not be bound in any thing, unless it shall be proved that the debt was converted to her benefit." In reference to this provision, the court said, in the case of Darnford *v.* Gros and Wife, above cited, — "Whether that restriction was attended with inconvenience is not for us to consider. Our duty is to declare the law, not to modify it." But that law being repealed, and another substituted in its place, declaring only "that the wife should not be bound as the surety of the husband," it is not to be supposed that a citation of decisions made under the law of Toro by the court, in cases where the wife was clearly the surety of the husband, was designed essentially to modify the substituted act. That, in many cases, as a matter of evidence, to charge the wife, it may be necessary to prove that the loan was applied to her use, may be admitted. But, under the above arti-

cle, we think that such evidence cannot be required as a matter of law. The cases cited did not turn upon that ground.

But there is another view arising from the facts of this case, which will now be considered.

This is a suit in chancery, and it is governed by the general principles of such a proceeding. No new principle is introduced to affect the relation of the parties, or to modify rights growing out of their contract.

It is a principle in chancery, that he who asks relief must have acted in good faith. The equitable powers of this court can never be exerted in behalf of one who has acted fraudulently, or who by deceit or any unfair means has gained an advantage. To aid a party in such a case would make this court the abetter of iniquity. And we suppose that this principle applies to the case under consideration. A *feme covert*, acting on her own responsibility, under the liberal provisions of the Louisiana law, may act fraudulently, deceitfully, or inequitably, so as to deprive her of any claim for relief. This results from the capacity to make contracts with which the law invests her.

Heath, the agent, as has already been said, acted in good faith. He proceeded deliberately, under legal advice, and there is no ground to charge him with unfairness or collusion against Mrs. Bein. Assurances were made to him, in the presence of his counsel, by Bein, acting in behalf of his wife, that the loan was for her; that it was *bonâ fide*, and without any concealment. Resting upon .hese and other assurances, the contract of loan was made, the mortgage was executed by Mrs. Bein, and the money paid by Heath to her, under the direction and sanction of his counsel. Now if these representations were false, and Heath was thereby induced to part with the money, can the complainant have a standing in equity?

Such a proceeding would be fatal, it is supposed, under the law of Toro. For if it were admitted, that, to make the loan binding on the wife, it must be proved to have inured to her use, yet if, through the fraudulent intervention of the husband, she negotiated the loan, giving to it her special sanction, equity would not relieve her. A doctrine contrary to this would enable the wife to practise the grossest frauds with impunity.

For nearly five years after the loan, the interest was punctually paid by Mrs. Bein, the house and lot were insured, and the policy annually assigned for the benefit of the mortgagee. These facts, connected with the representations which induced Heath to loan the money, show, if the loan was in fact for the husband, a deliberate fraud on her part. Under such circumstances, we think the complainant cannot invoke the aid of a court of chancery. She has acted against conscience, in pro-

curing the funds of the mortgagee. The law protects her, but it gives her no license to commit a fraud against the rights of an innocent party.

In the repeal of the law of Toro, and in substituting in its place article 2412, the legislature gave the most unequivocal evidence against the policy of that part of the repealed law which required proof to charge the wife that the money borrowed was applied to her use.

But in affirming the decree of the Circuit Court, we place our opinion upon the unconscientious acts of the wife. The decree of the Circuit Court is affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be and the same is hereby affirmed, with costs.