## SMITH v. JAMES MFG. CO. et al.

### No. 253.

District Court, W. D. New York.

Nov. 5, 1937.

Albert L. Ely, of Akron, Ohio (Max D. Farmer, of Buffalo, N. Y., of counsel), for plaintiff.

Toulmin & Toulmin, of Dayton, Ohio (John S. Powers, of Buffalo, N. Y., of counsel), for defendants.

KNIGHT, District Judge.

This motion is made for leave to take testimony of certain witnesses to establish a basis preliminary to an application to include as costs expenses of the defendants not heretofore taxed. The basis for the motion is the alleged "vexatious and un-

warranted prosecution of this suit by plaintiff with full knowledge of the invalidity of the patent during the entire prosecution of this suit."

The defendants are not entitled to tax these expenses as costs by virtue of any statute. None of the cases cited by the defendants support a claim that they are.

In Appliance Inv. Co. v. Western Electric Co., 2 Cir., 61 F.2d 752, 757, no question of good faith or fraud was involved. The question was whether an expense item was allowable under section 983 of the Revised Statutes, 28 U.S.C.A. § 830. The court held that the item was properly included as within the meaning of the language of the statute which included costs for "copies of papers necessarily obtained for use on trials." The opinion states that "we do not think adherence to that decision [Wooster v. Handy (C.C.) 23 F. 49] or to Cornelly v. Markwald (C.C.) 24 F. 187, requires disallowance of the item." In Wooster v. Handy the items of taxable costs were generally considered. It was held that, under section 983, supra, cost of obtaining copies of papers used in interlocutory or preliminary or incidental motions or hearings are not taxable. In Cornelly v. Markwald, C.C., 24 F. 187, the expense of obtaining a model of an infringing machine was not allowed as a taxable disbursement. The distinction, therefore, between Appliance Inv. Co. v. Western Electric Co., supra, and the Wooster and Cornelly Cases is clear. In Victor Talking Machine Co. v. Starr Piano Co., 2 Cir., 281 F. 60, it was held that expenditures for motion pictures and photographs of cutting tools, the pictures being necessary to enable the court to understand the processes involved, were taxable costs. This case distinguishes Wooster v. Handy and Cornelly v. Markwald, above cited, in pointing out that the items in those cases were treated as relating to "argumentative matters and not to physical exhibits bearing direct relation to the patent in suit," necessary, so the court could get a visual idea of the operation of the alleged patent, because the tools were of microscopic proportion. It construes such expenditures as within the meaning of "copies of papers necessarily obtained for use on trial." There is nothing here to show that the untaxed expenses come within the construction of the courts in the above-cited cases.

However, a court of equity is not limited to the allowance of costs that are fixed by statute. The provisions of the statute with reference to costs are found in sections 571, 572, 830, 831, title 28 U.S.C.A. and in various provisions of the Equity Rules, 28 U.S.C.A. following section 723. That the court has authority to allow a party certain expenses not included in the statutory items is held in Guardian Trust Co. v. Kansas City S. Ry. Co., 8 Cir., 28 F.2d 233, where the question was of the allowance of costs of a client against his attorney where special facts were shown. In Toledo Scale Co. v. Computing Scale Co., 7 Cir., 281 F. 488, where the question of fraud was involved, the court ordered the plaintiff company to pay the expenses reasonably incurred by defendant's attorney. In Standard Scale & Supply Co. v. Cropp Concrete Mach. Co., 7 Cir., 6 F.2d 447, 449, the court said: "It may be conceded at the outset that the imposition of this sum may not be justified as an item of costs in the ordinary sense. * * * It may be further conceded that its allowance may not be justified as a discretionary increase of damages within R.S. § 4921 (Comp.St. § 9467 [35 U.S.C.A. § 70 note]). * * * But it is sufficient for the purposes of this case to say that the decree below does not purport to lay this item upon defendant as an increase in damages. As above indicated, it is assessed against it as 'the cost to plaintiff of curing defendant's default.'" Vide, also, Krentler-Arnold Hinge Last Co. v. Leman, D.C., 24 F.2d 423; Parker Rust Proof Co. v. Ford Motor Co., D.C., 23 F. 2d 502; Gazan v. Vadsco Scales Corp., D. C., 6 F.Supp. 568, 569.

It follows that this court has the authority to allow items of expense, not specifically allowed by statute, on proof that such expenses were required to be incurred by reason of "vexatious and unwarranted prosecution of the suit, with full knowledge of the invalidity of the patent during the entire prosecution." Unhesitatingly we say that such prosecution under such circumstances would justify the court in allowing and the court would have authority to allow the defendants to recover certain expenditures not taxable as statutory costs.

The motion is made for leave to take the testimony of named individuals and "others" not named, and to use the record in this case to establish (a) that prior to the filing of the bill of complaint herein plaintiff had full knowledge of the Hastings prior use and the evidence by which it could be established; (b) that plaintiff

had in his possession testimony taken on his behalf in a prior cause; (c) that plaintiff refused to stipulate that witnesses would testify in accordance with affidavits filed in this court; (d) that plaintiff failed to produce this testimony until defendants had incurred great expense; and (e) that the plaintiff attempted to suppress evidence as to the Hastings prior use by offering to buy parts thereof. The motion asks that after taking the testimony a hearing be had to determine "(1) whether defendants' unusual expense shall be taxed as costs and (2) whether the court shall tax against plaintiff defendants' full costs for the defense of this cause."

█ This court is naturally conversant with the record in this case and the proceedings upon the trial of this suit. It is its unqualified opinion that there is nothing in the record which warrants the charge that any expenses of the defendants in the conduct of this suit were required to be incurred by the reason of "vexatious and unwarranted prosecution of this suit by the plaintiff, with full knowledge of the invalidity of the patent during the entire prosecution of this suit." The decision of this court, filed June 28, 1935, holding the patents valid and infringed was reversed by the Circuit Court (2 Cir., 83 F.2d 221) and such reversal affirmed by the Supreme Court (Smith v. Hall, 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049) upon the single ground that an incubator built by one Hastings and thereafter operated constituted a prior use. This motion is made wholly upon the alleged unwarranted acts or failures of plaintiff to act in connection with this so-called Hastings prior use.

It is claimed that plaintiff "had full knowledge of the Hastings prior use" prior to the commencement of this suit, and, in effect, had no equitable right to bring this suit. Defendants admit that they knew of this alleged device prior to the commencement of this suit and point to the opinions in several cases tried prior to this suit from which it appears that the so-called Hastings prior use device was fully considered. As a matter of fact, prior to the issue herein, the patents herein were in issue in at least twelve different suits, eleven of which were brought in these United States and one in Canada. In addition to these at about the time of the decision in this District Court these patents were held to be valid in the suit in the District of Connecticut.

In Buckeye Incubator Co. et al. v. Wolf, D.C., 291 F. 253, 258, the patents in suit were sustained. The opinion in the District Court definitely states that one of the contentions of the defendant "is the alleged prior uses and public disclosures of Milo Hastings." The opinion calls attention to various publications purporting to describe or refer to this Hastings structure. The opinion includes the court's description of the device as described in an application for a patent filed April 25, 1911. The opinion states: "He [Hastings] describes his invention as a hatchery in which better ventilation is secured by substituting a forced draft for gravity drafts. * . * * The specification and drawings disclose an apparatus which, in the light of our present knowledge on the subject, is known to be impracticable and inoperative. As described, it merely drives heated air down one side of an egg chamber, and permits it to filter through fabric or perforated partitions into the egg chamber, and escape, if it can, on the other side. No provision is made for removing foul air, or supplying fresh air, or conserving moisture." Further, it is said: "Neither the Hastings publications, nor his rejected patent * * * measure up to these exacting requirements of the patent law." Upon appeal, the Circuit Court of Appeals, 6 Cir., 296 F. 680, 681, said in affirming the District Court, in part: "This court having reached the conclusion that the decree of the District Court is right, for the reasons therein stated, it is wholly unnecessary to rewrite into this opinion a detailed description of the method of hatching, or of the incubators manufactured under these patents." The decision in the District Court was rendered on May 5, 1923, and in the Circuit Court on March 24, 1924.

In The Buckeye Incubator Co. and Samuel B. Smith v. Elden E. Cooley, decided April 23, 1925,[1] the court quotes at length from the decision of Judge Westenhaver in Buckeye Incubator Co. v. Wolf, supra, and the court devotes an entire page to the discussion of the Hastings patent as compared with the Smith patent. In Buckeye Incubator Co. et al. v. Cooley, 3 Cir., 17 F.2d 453, 455, decided February 8, 1927, again the Hastings prior use was considered. Comparison of Smith and the Hastings device is made at length. This brief quota-

---

[1] No opinion for publication.

tion from the opinion is sufficient for the purposes herein: "Hastings and Smith, the patentee, no doubt saw the same incubating problems, but Smith pursued a solution directly opposite that of Hastings." In Buckeye Incubator Co. and Smith v. Stone, decided February 8, 1927, by a master in chancery,[1] the question of the prior use of Hastings was specifically under consideration and the master devotes several pages of his opinion to the comparison and discussion of the patents in question. It is sufficient to state that the court said: "Next and more difficult question is whether Smith was anticipated by either Hastings or Lowery." Quotations followed by a detailed comparison. The master found that Hastings did not anticipate Smith. In the Findings in Smith v. Street, dated May 1, 1935,[1] it is specifically found that the Hastings did not anticipate Smith. In Smith v. Hall, decided July 18, 1935, D. C. of Conn.,[2] the findings of fact include a detailed description of the Hastings device and the patent application of Hastings dated April 15, 1911, and the findings therein include several pages related specifically to the Hastings device. As a conclusion of law it was found Hastings did not disclose a prior use and did not anticipate. In the case of His Majesty The King, on the information of the Attorney General of Canada v. The Smith Incubator Co. and one, in the Exchequer Court of Canada, decided January 29, 1936, the Hastings patent is considered at length. The court stated in part: "After a careful study of Hastings' experiments, I have reached the conclusion that they do not constitute an anticipation of the patent in suit. His apparatus and process differed from Smith's in many particulars."

In view of the above-mentioned decisions, plaintiff had good reason to believe the Hastings device was not a defense in this suit. Proof of that defense rested on defendants. The record in these earlier suits was equally available to defendants. Certainly able counsel must have been familiar with these opinions prior to the commencement of this suit, and, had they placed special reliance on Hastings, it would seem the gathering of proofs would not have been delayed till the trial was about to be begin.

It is claimed that plaintiff withheld a copy of the Hastings file wrapper and contents and produced it under compulsion. The record in this suit does not support this contention. That reads:

"Mr. Toulmin Jr.: Now, Mr. Ely, you have, as I understand, a complete copy of the record in the Cooley case. I want to rely upon Dr. Smith's testimony in that, and Mr. Ely has offered to let me have a copy of the complete record, rather than to put in our certified copy of Dr. Smith's testimony."

"Mr. Ely: My understanding this morning was that we not only would put in the Cooley record, but we would put in the testimony of Dr. Smith in all the other cases."

"Mr. Toulmin Jr.: That is all right with us."

The Cooley record was received. Defendants state that their information is that these records in the Patent Office had been destroyed, but they do not state efforts they had made to obtain them. They naturally would have assumed that the plaintiff here had a copy of such records and could have given notice to produce long before this trial. The Cooley decision gave them the lead.

While the opinion in the Stone Case was unreported, reasonable research would have disclosed it. The records would have disclosed the depositions of the several witnesses whose depositions are claimed to have been withheld. In any event there was no reason why plaintiff should have disclosed them in the first instance. Defendants claim that these disclosed that Hastings anticipated. Plaintiff denies this, and the opinion supports it. This proof was offered on the trial.

To support the Hastings defense, defendant upon affidavits moved to take certain depositions, and later asked plaintiff to stipulate that these witnesses would, if called, testify in accordance with the affidavits. The record discloses that certain alleged facts did not appear in the affidavits. In fact two of the proposed witnesses had never testified before in any of the trials. The plaintiff was entitled to cross-examine these affiants, and there was no obligation on his part to make the stipulation.

The depositions of other witnesses, Hastings and one Hickok, were taken. The trial was scheduled to begin shortly thereafter. The stipulation for taking these depositions and the correspondence

---

[1] No opinion for publication.

[2] See 2 Cir., 83 F.2d 217 and 301 U.S. 216, 57 S.Ct. 711, 81 L.Ed. 1049.

fully disclose that the testimony of the two only was to be taken. Defendants apparently willingly acceded to this limitation. In such correspondence, among other things, defendants' counsel stated: "However, we raise no objection to the condition you placed upon the stipulation." That condition limited the deposition to two. This limitation evidently was made to prevent delay of the trial. When the depositions were taken over the objection of the plaintiff, the deposition of an additional witness was taken. This testimony was received on the trial. The defendants were in no way injured, and the plaintiff was perfectly within his right in objecting.

■ Another question relates to the charge that the plaintiff sought to suppress evidence as to the Hastings prior use by offering to purchase parts of the Hastings device. The record discloses that Taggart, assistant manager of Smith, long prior to the commencement of this suit, offered to pay one Lieber $50 for a blower (or blower and trays as testified to by Lieber) for part of the Hastings structure; that Lieber asked $5,000 for these parts, and made it as a condition of purchase that they were not to be destroyed. No purchase was made. Nothing further appears to have been done. Taggart testified that he wanted the blower as a relic of prior incubator failures. There is nothing to disprove this statement of Taggart's purpose. In the moving papers defendants show nothing which they claim will disprove this statement of Taggart or that the plaintiff attempted to suppress evidence through this purchase, save and except the record herein. This situation would be far different had the purchase been made during the trial of this suit. This situation is analogous to that presented in Toledo Scale Co. v. Computing Scale Co., 261 U.S. 399, 43 S.Ct. 458, 464, 67 L.Ed. 719. There plaintiff claimed that the defendant had purchased certain scales in order to prevent the plaintiff from learning of the commercial practice and that the defendant fraudulently suppressed evidence thereof. Say the court there in part: "But there is not anywhere in the record, * * * any real evidence that the Toledo Company was,

in the slightest degree, interfered with by acts of the Computing Company in its search for evidence of the Phinney prior use. * * * There is not a scintilla of evidence to show any effort on the part of the Computing Scale Company to induce any witnesses not to testify, or to spirit them away from contact with the Toledo Company. * * * We do not understand it to be contended that there was any relation between the Computing Scale Company and the Toledo Company * * * or that silence in respect to the Phinney scales constituted that kind of fraud which would invalidate the decree, unless it was accompanied by acts which actually prevented the Toledo Company's finding and availing itself of such evidence. Clearly there is no such rule of law in a case like this."

There is considerable other pertinent language in the opinion therein.

The record does not sustain the claim that the acts of Taggart were done with the purpose to suppress evidence, or in other words to perpetrate a fraud upon these defendants.

■ In Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 147, 78 L.Ed. 293, cited by defendants, suit was brought on several patents. The plaintiff obtained a false affidavit in connection with the trial of another suit. An application for a temporary injunction was based upon the decision in a prior suit adjudging the validity of plaintiff's patent. Five patents were involved. The District Court held that the matters pertaining to the motion for preliminary injunction had no bearing upon the merits, and held three of the five patents valid. The Supreme Court applied the maxim that "It is a principle in chancery, that he who asks relief must have acted in good faith." See, also, Bein v. Heath, 6 How. 228, 12 L.Ed. 416. Vide Story's Equity Jurisprudence, 14th Ed., § 98; Pomeroy, Equity Jurisprudence, 4th Ed., § 397. With this declaration of rule in equity, long recognized, no court should venture to dissent. However, we see no violation of this rule in the instant suit.

Motion is denied.