BENJAMIN R. ORENT, Plaintiff-Appellant, v. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Respondent, and NEW ROCHELLE TRUST COMPANY et al., Defendants-Appellants.

Second Department, November 13, 1944.

*Mordecai Konowitz, Vernon Murphy* and *Maurice Smiley* for appellants Benjamin R. Orent and Jennie C. Orent.

*Albert Ritchie* for appellant New Rochelle Trust Company.

*Eugene T. O'Neill, Bernard K. Sprung* and *Leo D. Fitzgerald* for respondent.

LEWIS, J. On February 6, 1929, The Equitable Life Assurance Society issued to the plaintiff a $25,000 policy of life insurance in which his wife was named as beneficiary. The policy contained provisions for $250 monthly disability benefits, waiver of premiums, and payment of double indemnity. Seven actions by plaintiff to recover monthly disability benefits covering the period commencing May, 1938, and ending June, 1941, have been consolidated with an action by Equitable. The Society seeks in its action to set aside the disability and double indemnity

provisions of the policy on the ground of fraudulent conceal-
ment; to recover $15,000 in monthly benefits it paid plaintiff
for the periods April, 1932, to March, 1936, and June, 1936, to
May, 1937, upon fraudulent disability claims; and to have the
policy declared lapsed for nonpayment of 1933 to 1937 premiums
that the Society was fraudulently induced to waive. Equitable's
action is contested by the plaintiff, the beneficiary, and the
assignee of the policy, New Rochelle Trust Company. The
assignee counterclaims against the Society for $3,562.34, the
unpaid amount of loans made to plaintiff by the Trust Company
upon the security of the policy.

The trial court sustained the insurer's contention that the
plaintiff in his application for insurance, dated January 17,
1929, fraudulently concealed the fact that from November,
1925, to August, 1926, he had been imprisoned in a Federal
penitentiary at Atlanta after pleading guilty to concealment
of assets from a bankruptcy trustee. The application contained
the following questions and answers:

" 3.A. How long have you lived in your present locality?
(City or County)   A. 1915 (14 yrs.)   *   *   *

" 4.E. State occupations and home addresses during the last
five years differing from the present.  Previous Occupations:
[Not answered.]   Previous Home Addresses: 1175 E. 12 St.
Bklyn. from year 1926 to year 1929; 1594 E. Pkwy Bklyn. from
year 1920 to year 1926."

In substance, the insurer's claim is that the plaintiff should
have included the Atlanta penitentiary as one of his prior
" home " addresses. This contention is unsound. Words used
in an application for insurance must be construed according to
their ordinary usage. We do not regard a penitentiary as a
home. Furthermore, the evidence shows that during plaintiff's
period of incarceration his wife and children continued to occupy
the apartment at the East 12th Street address listed in his
application. The plaintiff was, of course, under no obligation
to volunteer information as to his conviction and imprisonment
when no question in the application required it to be furnished.
There was, therefore, no basis for finding that he had fraudu-
lently concealed his incarceration or for striking out the dis-
ability and double indemnity provisions of the policy.

The disability provisions of the policy entitled the plaintiff,
in the event of total and presumably permanent disability, to
the waiver of premiums subsequently falling due and to the
payment of a $250 monthly disability income. The policy defined
disability as presumably permanent: " (1) When due proof

is received by the Society that it will presumably exist continuously during the remainder of the Insured's life — then from the date upon which such proof is received by the Society; or, (2) When it has existed continuously for three months — then from the date of the expiration of such three months; * * * * * ,,

The policy also provided that the insurer should have the right at any time during the first two years after receipt of proof of total disability and thereafter once a year to require proof of its continuance; and to discontinue disability benefits if the insured failed to furnish satisfactory proof or if the total disability had terminated.

Plaintiff claimed and obtained payment from Equitable of disability income benefits from April, 1932, to March, 1936. The Society discontinued voluntary payment of these benefits for the months of April and May, 1936. Plaintiff brought suit therefor in the Municipal Court, the sole issue litigated being whether total disability continued during those months. A jury verdict was returned in favor of the plaintiff, and Equitable paid the judgment entered thereon. The Society then resumed payments, apart from litigation, for the period from June, 1936, to May, 1937.

Upon being informed that plaintiff and others connected with him had been indicted in May, 1937, in a Federal investigation of insurance frauds, the Society again discontinued payment of disability benefits. In four separate Municipal Court actions, in which Equitable interposed answers but defaulted upon the trial, judgments were obtained by the plaintiff for the monthly income benefits for the period from June, 1937, to April, 1938. Those judgments were paid by the Society.

The principal issue upon the trial of the present actions was whether the plaintiff was, in fact, totally and presumably permanently disabled; and, if not, whether he had procured the payments, apart from judgment, by fraudulent means. The trial court has found that he was not totally disabled from the date of the policy to the date of trial; and that he had, by his own fraudulent and untrue statements and those of physicians, induced the Society to pay him $15,000. We are of the opinion that this finding was amply supported by evidence which demonstrated that the plaintiff, under the instructions of an attorney, (not the present attorney) and physician and with the aid of drugs, simulated a diseased heart condition.

The plaintiff asserts that the five judgments he obtained in the Municipal Court actions, only one of which was contested.

estopped the insurer from denying that he was totally and presumably permanently disabled. There is no merit in this contention. Each of the Municipal Court actions covered months different from those for which the Society paid the moneys it now seeks to recover; and preceded the period for which additional compensation is now sought by the plaintiff. Since the policy permitted recovery for a " presumably permanent " disability, it was not necessary for the plaintiff to establish in those actions that he had been continuously disabled for more than the three-month period prescribed in the policy. (*Finkelstein* v. *Equitable Life Assurance Society*, 256 App. Div. 593, 596; affd. 281 N. Y. 690.) While the cited case held that under a policy providing for " total and presumably permanent disability," the insured need prove at the trial only that his disability was total and continued for the period specified in the policy, and that then the presumption of permanency became conclusive and irrebuttable, a judgment in a prior action obtained under such a policy was held to be *res judicata* only for the period claimed and adjudicated in the prior action. Furthermore, no issue of fraud was presented in plaintiff's earlier actions. Accordingly, it may not be held that the insurer was estopped from denying the plaintiff's disability and asserting fraud in these consolidated actions. (*Schuylkill Fuel Corp.* v. *Nieberg Realty Corp.*, 250 N. Y. 304.)

The insurer's concession, in the action litigated in the Municipal Court in 1936, that the plaintiff was totally disabled from March, 1932, to March, 1936, was expressly restricted to that action. The plaintiff was not prejudiced by the exclusion from evidence of the charge to the jury in the 1936 action since the sole issue submitted to the jury was the continuance of the disability during the two months in litigation. The reference in the charge to the concession as to the plaintiff's prior disability would have served only as cumulative evidence of the fact that the concession had been made. The charge did not change the limited nature of the concession.

The judgments in the prior actions are not under attack. The insurer does not seek the return of the moneys paid pursuant to the judgments in those actions. *Crouse* v. *McVickar* (207 N. Y. 213) and other cases cited by the plaintiff holding that collateral attacks may not be made upon judgments procured by fraud are, therefore, inapposite.

By reason of the plaintiff's fraud in procuring the waiver of the five annual premiums that became due in the years from 1933 to 1937, and his failure to pay those premiums, the trial court

has declared the policy lapsed. The record discloses, however, that prior to the commencement of this action Equitable, with knowledge of plaintiff's fraud, waived the prompt payment of those premiums; and that the premium notices sent to the plaintiff and assignee on May 5, 1941, did not comply with the provisions of the Insurance Law.

The insurer had been informed in May, 1937, that the plaintiff, his attorney in the 1936 action, and a doctor who had testified in his behalf in that action, had been indicted in a Federal court for frauds in connection with disability insurance claims. It was such information that led the Society to discontinue the payment of monthly income installments to the plaintiff after May, 1937. The Society, having reasonable grounds for suspecting the plaintiff of fraud, was charged with the knowledge which proper inquiry would have disclosed. (*Fidelity & Deposit Co.* v. *Queens Co. Trust Co.*, 226 N. Y. 225.) Nevertheless, from May, 1937, to the institution of this action, the Society followed an ambiguous course of action predicated in part upon the assumption that it had knowledge of the plaintiff's fraud and in part upon the assumption that it had no such knowledge.

In actions in the Municipal Court, which had been instituted by the plaintiff to recover disability benefits, the Society interposed no defense of fraud. Yet it sought to delay the trials and to avoid the taking of judgment against it in those actions by submitting affidavits in 1937 and 1938 calling attention to the indictments then pending against the plaintiff and others. Even though it discontinued the payment of disability benefits, it loaned the plaintiff $6,097.62 upon the policy in October, 1937, thereby recognizing the continued validity of the policy.

On September 14, 1938, in answer to an inquiry made by the New Rochelle Trust Company, which was about to make a loan to the plaintiff upon the security of the policy, the Society informed the Trust Company of its own loan to the plaintiff and of the amount of the cash surrender value in the event the 1939 premium was not paid; and also stated that premiums had been paid to January 26, 1939. Although the Society informed the Trust Company that it had seen fit to question the plaintiff's disability, had terminated his claim, and had restored the policy to a premium-paying basis, its statement that the " matter is now involved in litigation " could have had reference only to the actions by the plaintiff then pending to recover monthly benefits. The Trust Company was given no warning that the insurer contemplated questioning its earlier waiver of premiums, or that it intended at any future date to

revoke that waiver on the ground of fraud. Nor was any such warning contained in the Society's letter of February 9, 1939, answering a letter of the Trust Company dated February 6, 1939, specifically requesting information as to the status of the policy.

Until the commencement of this action the insurer chose to treat the policy as valid and in force. It accepted unconditionally the premiums which had been paid by the plaintiff, under protest, for the years 1939, 1940 and 1941. The last premium was accepted on February 15, 1941, at which time the Society had already been informed of the plaintiff's incarceration. On May 5, 1941, the very date this suit was commenced, the Society recognized the continued validity of the policy by notices it sent the plaintiff and his assignee. The evidence thus demonstrates that the Society, with knowledge of the plaintiff's fraud in procuring the waiver of the 1933 to 1938 premiums, had waived the prompt payment of those premiums. (*De Frece* v. *N. L. Ins. Co.*, 136 N. Y. 144, 151; *S. & E. Motor Hire Corp.* v. *N. Y. Indemnity Co.*, 255 N. Y. 69; *Oglesby* v. *Massachusetts Accident Co.*, 230 App. Div. 361; *Divita* v. *New York Life Insurance Co.*, 244 App. Div. 498.)

On May 5, 1941, Equitable notified the plaintiff and his assignee to pay the 1933 to 1938 premiums by June 5, 1941. The notices stated that the Society had rescinded the disability and double indemnity provisions of the policy. Since the insurer had no right to rescind the disability and double indemnity features of the policy, we are of the opinion that the notices to pay premiums which improperly asserted such a right, did not comply with the provisions of section 151 of the Insurance Law. In the absence of the notice required by statute, the policy could not lapse. It should be observed that the notices did not attempt to assert any right to revoke the Society's actual waivers of premiums on the ground that they had been fraudulently induced. Having received no proper notice to pay the accumulated unpaid premiums, the plaintiff should be given a reasonable opportunity to do so. (*Wilkes* v. *Equitable Life Assurance Society*, 262 App. Div. 73.)

In any event, the Society is estopped from asserting as against the Trust Company that the policy had lapsed for the nonpayment of any premiums due prior to 1939. The Trust Company was entitled to rely upon the information supplied to it. No unreasonable burden is imposed upon insurers by requiring them to supply correct information to a prospective collateral assignee of a policy. (See *Burrowes* v. *Lock*, 10 Ves. Jr. 470;

*Meeder* v. *Provident S. L. Assur. Society,* 171 N. Y. 432; *Ultramares Corp.* v. *Touche,* 255 N. Y. 170.) But the Society did not by giving misinformation become converted into an indorser of the loans made to the plaintiff. The Trust Company's counterclaim, insofar as it seeks to recover from the insurer the amount of its loans to the plaintiff, was therefore correctly dismissed.

The judgment appealed from should be modified on the law and the facts by striking out the second and third ordering paragraphs which direct rescission of the disability and double indemnity provisions of the policy and declare the policy lapsed; by striking from the fourth ordering paragraph the provisions thereof following the words " a total sum of $21,964.09 " to and including the words " a total sum of $16,871.41 "; and by inserting therein a paragraph directing that the plaintiff have until thirty-one days after service of a copy of the amended judgment to be entered hereon to pay any unpaid premiums for the years 1933 to 1938, inclusive, without interest. As thus modified, the judgment should be affirmed, without costs.

CLOSE, P. J., HAGARTY, JOHNSTON and ADEL, JJ., concur.

Judgment modified on the law and the facts by striking therefrom the second and third ordering paragraphs; by striking from the fourth ordering paragraph the provisions thereof following the words " a total sum of $21,964.09 " to and including the words " a total sum of $16,871.41 "; and by inserting therein a paragraph directing that plaintiff have until thirty-one days after service of a copy of the amended judgment to be entered herein to pay any unpaid premiums for the years 1933 to 1938, inclusive, without interest. As thus modified, the judgment is unanimously affirmed, without costs. [See amended decision 268 App. Div. 1005.] [See *post,* p. 1051.]