## FRAD v. COLUMBIAN NAT. LIFE INS. CO.

United States District Court
S. D. New York.
June 21, 1949.

See also 178 Misc. 705, 37 N.Y.S.2d 250.

Harris Jay Griston, New York City, for plaintiff.

Baldwin, Todd & Lefferts, New York City, for defendant.

KAUFMAN, District Judge.

This action was commenced by William Frad for a judgment declaring that three policies of life insurance issued by defendant on his life continue in full force and effect. Prior to the trial of the action and and on September 16, 1944 the insured died, and Ella Frad, his widow, as executrix of his estate, was substituted as plaintiff in place and stead of the insured. At a pre-trial conference it developed that the widow of the insured was the beneficiary named in said policies. An order was thereupon made substituting Ella Frad, the beneficiary, as plaintiff in the action, in place and stead of herself as executrix of the estate of her deceased husband.

At the trial of the case, an order was made on consent of the parties that the executrix be regarded as a third-party defendant, against whom defendant The Columbian National Life Insurance Company is asserting a counterclaim for disability payments made by it to the insured during his lifetime and for certain premiums alleged by the insurance company to be due on said policies.

The facts as developed at the trial are as follows:

In 1928 and 1929, Frad applied to defendant for life insurance in the face amount of $20,000. In his applications for the policies, Frad described himself as a clothing salesman employed in New York City. According to the evidence, the insurance company had no information to the contrary and issued the three policies (Pltf's Exs. 5, 6 and 7), as follows:

No. 182928, dated December 3, 1928, for $10,000.
No. 190905, dated July 30, 1929,   for $ 5,000.
No. 192209, dated December 3, 1929, for $ 5,000.

It is clear from the evidence that the representation as to the occupation of the insured, as stated in his application, was false and fraudulent. He was not employed as a clothing salesman, as he represented himself to be, but as a "card sharp", in the pursuit of which activity he made trips on transatlantic liners and, together with certain confederates, engaged in card games for very large amounts of money, fleecing various of the victims whom he met on these ocean liners. For the purpose of carrying out his activities with his confederates, he traveled under various assumed names and carried passports that were fraudulently secured by him under such assumed names. He continued these activities until the time of his death, except during periods when he was serving terms of imprisonment for violation of the law with respect to obtaining false passports and for income tax evasion.

The policies provided for waiver of premiums and payment of disability benefits at the rate of $200 a month in the event of the insured's total and permanent disability. The definition of disability in the first of the policies is that the insured be "wholly disabled by bodily injury or disease

so that he is and thereby will be permanently and continuously unable to engage in any occupation whatever for remuneration or profit".

In the latter two policies, the definition is that the insured be

"totally disabled by bodily injuries or disease so that he is and will be permanently and continuously prevented thereby from performing any work and from conducting any business for compensation or profit."

On November 13, 1933, while traveling aboard the SS Bremen under the name of "Swift", Frad suffered a heart attack and was taken from the boat to a hospital in Bremen, where he remained for some period of time. Approximately two years later, on or about November 15, 1935, he made a claim for disability benefits under the provisions of the aforementioned policies. After examination by its physicians, the defendant approved the claim, waived payment of premiums which became due in December 1935, and commenced to pay the disability benefits. The defendant continued to waive the premiums and to pay disability benefits until July 1937.

In July 1937, having learned of a game in which Frad allegedly wrung some $36,-000 from one Ritker, and having heard various rumors respecting the activities of the insured, defendant refused to make further disability payments under the policies. After waiting a few months, the insured brought suit in the City Court of the City of New York to recover the payments that were not made and to compel the payment of further disability payments. By reason of the insured's imprisonment, his case was not brought to trial until June 1939. At or about that time it was settled by payment by defendant to the insured of the sum of $4,696.56, which represented claims for disability payments and waiver of premiums from August 1937 through June 1939.

After the settlement of the City Court action, the insurance company continued to make disability benefit payments, and to waive the payment of premiums, until March 1940. At that time it received some additional information as to the activities of the insured, particularly his participation in a game on the SS NIEU Amsterdam, and therefore defendant discontinued the payment of disability benefits. Frad then commenced an action in the Municipal Court of the City of New York to recover disability benefits under the policies for the months of April, May and June, 1940. In its original answer, the insurance company counterclaimed to recover not only the disability benefits it had paid both before and after the period covered by the City Court action and settlement, but also to recover the premiums which it had waived on the policies during the period from 1935 down to and including the time of its discontinuance of the waiver of such premiums in March 1940. Subsequently the defendant amended its answer in the Municipal Court action by omitting its claim for recovery of the premiums which it had waived, but asserted instead an equitable defense that the policies had lapsed for nonpayment of premiums.

In January 1941, during the pendency of the Municipal Court action, the insured, using the three insurance policies as collateral, borrowed $4,000 from the Colonial Trust Company (hereinafter referred to as "the bank"), an amount which, in September 1941, was increased to $6,300. Before making the loan, the bank inquired of the insurance company as to the status of the policies and in response was given a statement in the usual form for each policy, showing the current cash value.

On September 2, 1942, as a preliminary to the amendment of its answer in the Municipal Court action, defendant tendered to the insured a refund, which was refused, of all premiums paid by him since July 1940, and sent to the bank a copy of its letter making such tender. This action by the insurance company alarmed the bank, which telegraphed to the defendant to stop payment on the refund check, but defendant took the position that the insured had obtained by fraud the waiver of premiums commencing with those that fell due in December 1935 and July 1936, and accordingly, that the policies had lapsed. The insurance company further contended that, having also been induced by fraud to pay disability benefits, it had a lien, to re-

coup its loss, on the cash surrender values of the policies.

On the trial of the Municipal Court action, in October 1942, the court dismissed the equitable defense that the policies had lapsed by reason of the fraudulent representations of Frad in inducing the insurance company to waive payment of premiums on the policies, upon the ground that the court lacked jurisdiction to entertain an equitable defense. The court submitted to the jury plaintiff's claim to recover disability payments and also the defendant's counterclaim to recover the disability payments made by it to Frad. The jury found against the plaintiff on his claim for disability payments. It also found against the defendant on its counterclaim for payments previously made. On appeal by both sides to the Appellate Term of the Supreme Court, the judgment, insofar as it dismissed the complaint, was affirmed, but insofar as it dismissed the counterclaim, it was reversed with an opinion as follows:

"The evidence is overwhelmingly in favor of defendant's counterclaim for the return of the disability payments. The finding of the jury to the contrary was against the weight of such evidence. Consequently, on the appeal by defendant, judgment dismissing the counterclaim is reversed, and judgment directed therein in the sum of $1,000 (the maximum allowable in the Municipal Court); on the appeal by plaintiff, judgment is affirmed with $30 costs to defendant-respondent-appellant."

On reargument, the original decision was adhered to, except that instead of directing judgment for the insurance company on its counterclaim, the counterclaim was severed and sent back for retrial.

In December 1942, when premiums fell due on policies Nos. 192209 and 182928, the bank obtained forms for changing the method of premium payment from annual to monthly, and delivered its check to one of the defendant's local agencies in payment of premiums for that month. When this came to the attention of the home office of the insurance company in Boston, repayment was tendered to the bank, upon the ground that the policies had lapsed and no premiums were due or could be accepted. The forms for change of premium from annual to a monthly basis were, for the same reason, never countersigned.

On January 19, 1943, the insured's loan to the bank became due and was unpaid. On January 22, 1943, counsel for the bank wrote to the insured, his wife as beneficiary, and to the attorney for the insured and his wife, that they had come to the conclusion that they would advise the bank to surrender the policies for cash in order to pay off the loan, arrears of interest and attorney's fees. There then followed negotiations between the bank and the insurance company, as a result of which it was apparently agreed, on January 25, 1943, that the bank would send a 20-day notice to the insured to meet his obligation to pay the note to the bank, and upon his failure to meet his obligation the bank would apply to the insurance company for a loan, and that upon the company's failure to make the loan the bank would demand the cash surrender value of the policies. The attorney for the insured also made an application to the insurance company for a loan on the said policies, his purpose being to pay the loan to the bank. In connection with this application, the attorney for the insured claimed that he was acting for the bank in connection with the application for the loans. In March 1943, the attorney for the insured advised the insurance company that if it accepted surrender of the policies from the bank for their then cash surrender value, any payments made by the insurance company would be at its own peril. On or about April 24, 1943, the insurance company accepted surrender of the three policies from the bank and paid to it the cash surrender value of the policies.

The insured then commenced this action, alleging that the defendant had fraudulently induced the bank to surrender the policies, and prayed that the payment made by the bank be treated as a loan to the insured on said policies, and that the policies be reinstated and be deemed in full force and effect. Defendant asserted counterclaims demanding judgment that the

court declare that the policies had lapsed for nonpayment of premiums and that the policies were properly surrendered.

Between January 1936 and July 1937, the insurance company paid the insured $3,800. in disability benefits, and between July 1939 and March 1940 it paid him $1,800. in disability benefits. These amounts the insurance company seeks to recover under its counterclaims, on the ground that the payments were induced by fraudulent representations by the insured to the effect that he was, during these periods, wholly and totally disabled within the meaning of the disability clauses of the respective policies. These provisions are set forth in an earlier part of this opinion and need not be repeated here.

■ It is clear from the evidence that the insured procured these disability payments by fraudulent misrepresentations. It is no answer to say, as plaintiff does, that the insured was in fact seriously ill from some heart ailment and that the insurance company verified that fact by examinations conducted by its own physicians. The issue is not whether or not insured was seriously ill; the issue is whether or not his illness incapacitated him from engaging in "any occupation whatever for remuneration or profit" or from "conducting any business for compensation or profit". Steingart v. Metropolitan Life Ins. Co., 249 App.Div. 114, 291 N.Y.S. 550, affirmed 276 N.Y. 674, 13 N.E.2d 56; Shabotzky v. Equitable Life Assurance Society, 257 App.Div. 257, 12 N.Y.S.2d 848, leave to appeal denied 257 App.Div. p. 957, 14 N.Y.S.2d 279; Starr v. Equitable Life Assurance Society, 257 App.Div. 261, 12 N.Y.S.2d 953. As to that, the evidence establishes, without contradiction, that the insured's regular "occupation" and "business", at the time he took out the policies, was that of a gambler, operating with confederates on transatlantic steamships and, when traveling on steamships became impossible in consequence of the advent of war, at various resort hotels. The evidence is equally clear and uncontradicted that the insured continued in the same "occupation" and "business" throughout the period during which these disability payments were made to him upon the representations aforementioned. One who, at the time he takes out a policy, makes his living by engaging in a certain "occupation" or "business", even though it be gambling, can hardly be heard to say later on, and while engaged in the same "occupation" on "business", that he had become wholly and totally disabled so as to prevent him from engaging in any occupation or conducting any business for compensation or profit.

■ Plaintiff also contends that the settlement of the City Court action in June 1939 bars defendant from recovering the disability benefits paid prior to that date. The City Court action was brought to recover disability payments for a period commencing August 1937. The case was not brought to trial until June 1939 and no disability payments had been made in the meantime. No issue was tendered in that action with respect to the insured's right to disability payments which had been made to him prior to August 1937, and there is no evidence that either party, by the settlement of that action, intended that the insurance company give up any rights it may have had with respect to these earlier payments. In these circumstances, even if the settlement were given the effect of a judgment, it would not bar defendant's claim to recover for benefits paid prior to July 1937 because, as the court said in Orent v. Equitable Life Assurance Society, 268 App.Div. 299, 305, 51 N.Y.S.2d 115, 119;

"a judgment in a prior action obtained under such a policy * * * [is] held to be res judicata only for the period claimed and adjudicated in the prior action."

Insofar as the second counterclaim is concerned, i. e., the counterclaim to recover disability payments made during the period July 1939 to March 1940, plaintiff argues that no representations were made by the insured after the initial filing of proofs of claim and, consequently, that the payments made during the period involved in this counterclaim were not induced by any false representations on the part of the insured.

In the proofs of claim filed by the insured, he stated that he would be "continuously" incapacitated from performing any work or conducting any business. In one proof of claim he said that the period of such disability would "never" end, and in another that it would continue "in the same or a greater degree for the duration of the insured's life". The insured continued to accept the disability payments though he knew (1) that he was entitled to them only if, and as long as, he was disabled, and (2) that the insurance company relied on his representation as to the continuing character of his alleged disability, and (3) that he was, in fact, not disabled. In these circumstances, the insured's acceptance and retention of the disability payments, without notifying the insurance company of the facts, was just as much a continuing misrepresentation as would have been an affirmative statement that his condition continued to entitled him to the payments under the policies. One who is entitled to disability payments only while he is disabled, and who continues to accept such payments when he is not disabled, with knowledge that the insurance company makes the payment only because it believes that his initial representation of disability continues to be true, is guilty of a concealment with intent to defraud of facts which he is in duty bound to disclose, and as the court said in Nasaba Corporation v. Harfred Realty Corporation, 287 N. Y. 290, 295, 39 N.E.2d 243, 245, such a concealment

"is of the same legal effect and significance as affirmative misrepresentations of fact."

The insurance premiums having been waived by defendant, it could not by unilateral declaration validly lapse the policies for their non-payment. In legal effect, the waiver of premiums by the insurance company did not result in the premiums remaining unpaid; in such cases, in return for an additional premium paid by the insured, the insurance company, in effect, makes the payment for him. The result is that the policy continues in the same full force as if the premiums had been paid by the insured. There is, accordingly, no basis for the contention that because the payments of the premiums by the insurance company were induced by the fraud of the insured, the policies lapsed. All that happened is that the policies continued in force as premium paid and therefore not subject to the declaration of lapse for non-payment, leaving the insurance company with a claim against the insured for the moneys it was, in effect, induced to advance to keep the policies alive. Prior to the time of surrender, the insured would have been entitled to a judicial declaration that the policies were in full force and effect notwithstanding the fact that he had been guilty of unconscionable conduct in inducing the waiver of premiums and the disability payments by defendant. Orent v. Equitable Life Assurance Society, 268 App. Div. 299, 51 N.Y.S.2d 115; Wilkes v. Equitable Life Assurance Society, 262 App. Div. 73, 27 N.Y.S.2d 935, affirmed 289 N. Y. 63, 43 N.E.2d 812; Grauer v. Equitable Life Assurance Society, 167 Misc. 30, 3 N.Y.S.2d 564; Standard v. Equitable Life Assurance Society, New York Law Journal, March 7, 1936, p. 1197, col. 4, affirmed 249 App.Div. 617, 292 N.Y.S. 180, affirmed 274 N.Y. 519, 10 N.E.2d 529.

[6] The just and fair rule to be applied where a claim of fraudulent procurement of waiver of premiums is made by the insurance company is to treat the policy as in force until the insurance company proves its contention at the trial. As Mr. Justice Rosenman said in the Grauer case, supra, in this way no harm is done to either party if the insured succeeds. If, on the other hand, the insurance company succeeds,

"the court sitting in equity may determine that the * * * [insured] be allowed to pay all of the premiums which had theretofore been waived by the * * * [insurance company] within a reasonable time to be set by the court." 167 Misc. at page 39, 3 N.Y.S.2d at page 573.

Moreover, defendant, with actual knowledge of most of the insured's activities, accepted the premiums from June 1940 until September 1942. This operated as an irrevocable election not to rescind the contracts for the insured's fraud in inducing the waiver of premiums. Brennan v. Na-

tional Equitable Investment Co., 247 N.Y. 486, 160 N.E. 924; Oglesby v. Massachusetts Accident Co., 230 App.Div. 361, 244 N.Y.S. 576; 3 Williston on Contracts, § 753 (Rev.Ed.1936); A.L.I., Rest. of Contracts, § 484. Thereafter, insofar as the disability benefits paid and the premiums waived are concerned, defendant was relegated to an action or counterclaim for damages. See Brennan v. National Equitable Investment Co., supra, 247 N.Y. at page 490, 160 N.E. at page 925; 5 Williston on Contracts § 1527 (Rev.Ed.1937).

At the threshold of plaintiff's right to recover, however, is the question of the effect of the bank's surrender of the policies to the insurance company upon its payment to the bank of their cash surrender value. These policies had been assigned by the insured to the bank in January 1941 to secure the repayment of a loan of $4,000 which, in September 1941, was increased to $6,300. The assignments were signed by both the insured and his wife, then and up to the time of the insured's death the beneficiary named in the policies, and now the insured's executrix.

The assignments to the bank provided:

"B. It is expressly agreed that * * * the following specific rights are included in this assignment and pass by virtue hereof; * * *

"2. The sole right to surrender the Policy and receive the surrender value thereof * * *.

"3. The sole right to obtain one or more loans or advances on the Policy * * *."

The surrender rights given the insured by the policies were binding upon the insurance company and irrevocable by it Pacific States Life Insurance Co. v. Bryce, 10th Cir., 67 F.2d 710, 91 A.L.R. 1446; Mutual Life Insurance Co. v. Kaiser, 193 Miss. 581, 10 So.2d 766, and by virtue of assignments to the bank the insurance company was obligated to recognize a demand for the surrender value duly made by the bank. Moreover, by the terms of the assignments, the insurance company was expressly authorized to recognize a surrender by the bank, as assignee of the policies. Subdivision F of the assignments reads:

"The Insurer is hereby authorized to recognize the Assignee's claims to rights hereunder without investigating the reason for any action taken by the Assignee, or the validity or the amount of the Liabilities or the existence of any default therein, or the giving of any notice under Paragraph E (2) above or otherwise, or the application to be made by the Assignee of any amounts to be paid to the Assignee. The sole signature of the Assignee shall be sufficient for the exercise of any rights under the Policy assigned hereby and the sole receipt of the Assignee for any sums received shall be a full discharge and release therefor to the Insurer. Checks for all or any part of the sums payable under the Policy and assigned herein, shall be drawn to the exclusive order of the Assignee if, when, and in such amounts as may be requested by the Assignee."

It is clear, therefore, that the documents purported to confer on the insurance company the right to accept a surrender of the policies from the bank and to pay the bank the cash surrender value thereof.

However, the second amended answer of the defendant insurance company admits the following allegations in paragraph 90 of the complaint:

"Upon information and belief, the defendant, through its attorneys and representatives, advised the said Colonial Trust Company at various times between December, 1942 and March, 1943, that said policies were lapsed for non-payment of the premiums, which had been waived, that defendant had a lien on the cash surrender values thereof in excess of those amounts and that, therefore, said policies were null, void, and of no effect, and worthless to plaintiff or the bank, and that the defendant would not make any loan on the said policies, in any amount whatsoever, to either the assured, the beneficiary, or to the bank."

These statements by the insurance company to the bank induced the bank to surrender the policies, and these statements were untrue in fact as well as in law. The insurance company should not be permitted to enrich itself by a surrender of policies so procured.

52

█ Plaintiff, as beneficiary under the policies, is therefore entitled to judgment against defendant insurance company in the amount of $11,524.17, computed as follows:

| | | |
|---|---|---|
| Face amount of policies | | $20,000.00 |
| Amount paid by defendant to Colonial Trust Company | $6,525.30 | |
| Interest thereon at 6% to date of insured's death | 548.13 | |
| Premiums payable on the policies from December, 1942 to date of insured's death | 1,402.40 | 8,475.83 |
| | | $11,524.17 |

Although the insurance company, upon being charged with the face amount of the policies, is entitled to the premiums which would have been payable, but were not paid, up to the time of the insured's death, it should not have interest on this amount inasmuch as these premiums would have been paid if the insurance company had not procured the surrender of the policies.

█ Defendant insurance company is entitled to recover on its counterclaims the disability payments made by it from January 1936 to July 1937 ($3,800.) and from July 1939 to March 1940 ($1,800.). Defendant, under its alternate prayer for relief, and for the same reasons that it is entitled to recover the disability payments, is also entitled to recover the premiums waived by it from December 1935 to July 1937 ($1,223.10) and from July 1939 to March 1940 ($701.20), making a total of $7,524.30, to which interest is to be added to the date of the insured's death. The judgment on these counterclaims, however, will run against plaintiff in her capacity as executrix of the estate of the deceased, inasmuch as the defendant stands in the position of a creditor of the insured for these amounts, see Standard v. Equitable Life Assurance Society of the United States, New York Law Journal, March 7, 1936, p. 1197, col. 4, affirmed 249 App. Div. 617, 292 N.Y.S. 180, 274 N.Y. 519, 10 N.E.2d 529, and since under the laws of the State of New York, Insurance Law, McKinney's Consol.Laws, c. 28, § 166(1), the proceeds of the policies may not be reached by creditors of the insured, the judgment in favor of defendant and against plaintiff in her capacity as executrix may not be offset against the judgment in favor of plaintiff in her capacity as beneficiary under the policies.

Findings of fact and conclusions of law are made as herein indicated.