### FRAD v. COLUMBIAN NATIONAL LIFE INS. CO.

No. 266. Docket 22003.

United States Court of Appeals Second Circuit.

Argued June 8, 1951.

Decided Aug. 20, 1951.

---

Harris Jay Griston, New York City, for plaintiff-appellant.

Baldwin, Todd & Lefferts, New York City (Samuel M. Lane, New York City, J. Kenneth Campbell, New York City, of Counsel), for defendant-appellant.

Before CHASE, CLARK and FRANK, Circuit Judges.

CHASE, Circuit Judge.

In 1928 and 1929 William D. Frad, a resident of New York City, purchased three policies of insurance upon his life from The Columbian National Life Insurance Company, a Massachusetts corporation. The beneficiary named in each of these policies was his wife, Ella Frad, and the aggregate amount of the insurance was $20,000. Each of the policies provided that the contract should be incontestable, except for non-payment of premiums, after it had been in force for one year, and each also provided that upon proof of total and permanent disability of the insured before he became sixty years old the company would waive the payment of future premiums and would make designated disability payments to him monthly.

The premiums on all of these policies had been paid and they were in full force and effect when, on November 15, 1935, the insured, not being sixty years of age, applied to the company for a waiver of premi- ums and for disability payments, presenting therewith proof of total and permanent disability. The company, after investigation, approved the application on January 10, 1935, waived the premiums which were due on December 3, 1935, and began to make disability payments to the insured in the amount designated in the policies, the first being as of January 5, 1936.

Meanwhile the company learned that, although Frad had represented when he applied for each policy that he was a mercantile salesman, he had in fact been a "professional" gambler at cards for high stakes, and that he had resumed that vocation on a cruise he had taken in 1936.

On August 4, 1937, it notified the insured that it believed that he had engaged, or had become able to engage, "in an occupation for remuneration or profit," and advised him that it would no longer waive premiums or make disability payments, although it would "give proper consideration to any proofs of total and permanent disability he might desire to submit in the future as provided in the contracts."

Frad, however, insisted that he was entitled to a continuance of the waiver of premiums and the disability payments and, failing so to persuade the company, he sued it in the City Court of the City of New York. This suit was not brought on for trial until June, 1939, and at that time the company elected not to defend it. Instead, it paid Frad $4,696.55 in full settlement of his claim for disability payments to that month and for premiums he had paid since the refusal to waive them.

Thereafter, the company continued to waive premiums and to make disability payments until it gained further information that Frad was gambling extensively at cards. It then, on May 3, 1940, advised him again that it refused to continue to do so, and on June 11, 1940, he brought suit against it in the Municipal Court for the City of New York to recover disability payments then claimed due for the months of April, May, and June, 1940. In this action the company filed a counterclaim seeking to recover, because of fraud, all waived premiums and all disability pay-

ments except the amount paid in compromise of the previous suit.

Before the suit was tried and in January, 1941, Frad applied to the Colonial Trust Company for a loan to be secured by the policies. The Trust Company advised the insurer of the application and requested pertinent information concerning each policy. The insurance company in reply acknowledged that on January 16, 1941, each policy was in force with no premiums in arrears and no loans outstanding, and that the combined loan and cash surrender values substantially exceeded the loan sought. The Trust Company then made the loan to Frad and, on January 11, 1941, the policies were assigned to it as security, with the knowledge and consent of the insurer. The assignments provided that the Trust Company should have the sole right to surrender the policies for their cash value and the sole right to obtain loans on the policies.

On September 2, 1942, while the action in the Municipal Court was still pending, the insurer wrote Frad that because the waiver of premiums and the disability payments had been fraudulently obtained by him, it had "elected to consider the waiver of all premiums commencing with those of December, 1935, as now void and of no effect and to treat the policies as lapsed since December, 1935 and July, 1936, respectively." It enclosed with this letter its check drawn to his order for the amount, with interest, of all premiums he had paid since its refusal to waive the payment of premiums in 1940. A copy of the letter was sent to the Trust Company. Frad refused to accept the check and returned it to the insurer, and either he or the Trust Company continued, despite the insurer's rejection, to tender the premiums as they fell due until the policies were surrendered as noted below, the Trust Company insisting that the insurer was as to it estopped to repudiate its representations that the policies were in full force and effect when it made the loan to Frad.

In accordance with the position it had taken in this letter of September 2, 1942, the insurance company amended its counterclaim in the Municipal Court action by eliminating its claim for the recovery of premiums waived and by pleading, instead, an equitable defense based upon the lapse of the policies for non-payment of premiums in 1935 and 1936. When the suit was tried in October, 1942, this equitable defense was dismissed for lack of jurisdiction, and the cause was submitted to a jury which returned a verdict against Frad on his claim for disability payments the insurer had refused to pay and against the insurer on its claim to recover disability payments it had made. On appeal by both parties the judgment against Frad was affirmed and that against the insurer was reversed. On reargument, the counterclaim was severed and that cause remanded for a retrial, but the action was discontinued without further proceedings.

On January 19, 1943, the Trust Company's loan to Frad became due and he failed to pay it. Attorneys for the bank then notified Frad and his wife, as the beneficiary under each policy, that they would advise the bank to surrender the policies for their cash value to pay the amount due it. Frad applied to the insurer for a loan on the policies with which to pay the bank and that was refused. The bank and the insurer had negotiations which resulted in an understanding that the insurer would, and it did, advise the bank that an application by it for a loan on the policies would be refused, but that it would pay to the bank $6,525.30 as their cash surrender value in settlement of the bank's claims and, over the protest of Frad, it was paid and the policies were surrendered to the insurer for cancellation on April 24, 1943.

On July 26, 1943 Frad brought suit in the Supreme Court for the State of New York to have the amount paid the bank declared to be a loan on the policies and to compel the reinstatement of the policies upon the payment, within a reasonable time to be fixed, of premiums due for the period since the surrender of the policies to the insurer. The defendant removed the suit to the district court. In an amended answer it denied all liability on the policies and counterclaimed to recover the disability payments it had made; to have its settle-.

ment of the first suit set aside for fraud; to have the policies declared lapsed for non-payment of premium; and to have the surrender of the policies held valid.

Before the suit was tried Frad died. By stipulation Ella Frad, the beneficiary, was substituted as the plaintiff and, having been appointed her husband's executrix, she was, on motion, made a third-party defendant.

In a second amended answer on which issue finally was joined the appellant denied that the policies were surrendered in violation of the insured's rights, denied that the complaint stated a cause of action against it, and asserted the equitable defense of unclean hands. It counterclaimed (1) to recover $3,800 in disability payments made between January, 1936, and July, 1937, and (2) to recover $1,800 in disability payments made between July, 1939, and April, 1940, and (3) for a declaratory judgment that the policies were lawfully surrendered to it on April 24, 1943, for their then cash values computed on the assumption that the premiums to that date had been duly paid by cash or waivers.

The cause was tried without a jury. The surrender of the policies was held void and the plaintiff had judgment for the face amount of them less the amount paid to the bank and the amount of the premiums which fell due between the time the insurer refused to waive or to accept them in 1942 and the date of Frad's death. From this judgment the insurance company has appealed. Judgment was entered against the executrix for the amount of disability payments made and the premiums waived, and she has not appealed.

■ The judgment against the executrix establishes for present purposes that Frad fraudulently obtained the waivers of premiums the insurer did waive and the disability payments it did make to him. Nevertheless, so long as the premiums were either waived as they fell due, or were paid, the policies continued to be premium-paid ones. Even on the assumption that the insurer could have obtained a rescission of the waivers, the policies would not lapse simultaneously with the ac-

crual of the right to such rescission. The insurer had also waived the due date on which the insured was obliged to pay, and before the policies would lapse for non-payment of premiums it was bound to give the insured a new reasonable due date on which to pay them. Orent v. Equitable Life Assurance Society, 268 App.Div. 299, 51 N.Y.S.2d 115; Wilkes v. Equitable Life Assurance Society, 262 App.Div. 73, 27 N.Y.S.2d 935, affirmed 289 N.Y. 63, 43 N.E. 2d 812; Meeder v. Provident Savings Life Assur. Soc., 171 N.Y. 432, 64 N.E. 167. Admittedly it did not. Consequently, if, by hypothesis, the insurer did have a right, because of the insured's fraud in obtaining disability payments and waivers of premiums, to cause the policies to lapse, see Apter v. Equitable Life Assurance Society, 271 N.Y. 653, 3 N.E.2d 469, it did not elect to do so, and for present purposes they must be treated as having been in full force and effect at the time of their surrender.

Before this surrender Frad's loan to the bank was in default. The bank was then entitled to enforce its rights under the assignment of the policies as collateral. But as this assignment was for security only we assume that the bank could not terminate the contracts by their surrender against the insured's will if it could otherwise realize on its security as by securing a loan on the policies from the insurer sufficient to pay Frad's debt. See Missouri State Life Ins. Co. v. Langreder, 7 Cir., 87 F.2d 586.

■ At the time of surrender, however, Frad had fraudulently caused the insurer to waive premiums, that is, to pay them for his account, and to make disability payments. While the premium waivers did keep the policies in force, neither those waivers nor the disability payments were benefits to which the insured was entitled under the policies. Instead, they are to be now treated in equity as advances he had obtained on the policies without right and as a debt owing by Frad to the insurer. As such, they were proper charges under the terms of the policies against the accumulations known as the cash and loan values, and decreased those values *pro tanto*.

Each policy provided expressly that: "If there be any indebtedness to the Company on this policy including any unpaid premium or portion thereof to the date of lapse or surrender, the Cash and Loan Values will be diminished thereby, * * *"

■ This indebtedness as of the time the insurer refused to make a loan on the policies amounted, without interest, to $5,600 for disability payments made, and to $1924.30 for premiums, making a total of $7,524.30, which substantially exceeded the combined loan values the policies would otherwise have had. The insurer, being obliged to make loans on the policies only to the extent of their existing loan values, was therefore free to refuse to make any loan on the policies for the benefit of the insured whose equities in the policies had been extinguished by his receipt of the proceeds of his own fraud.

■ Upon Frad's default, the bank was therefore fully empowered by the terms of the assignment to surrender the policies to obtain payment of the note it held. Conlew, Inc., v. Kaufman, 269 N.Y. 481, 199 N.E. 767; Travelers' Ins. Co. v. Healey, 25 App.Div. 53, 49 N.Y.S. 29, affirmed 164 N.Y. 607, 58 N.E. 1093. And the insurer, having represented to the bank before the loan was made that the policies were good security, may have been estopped to rely upon Frad's fraud in resisting the bank's demands. At any rate, it was willing to, and did, settle with the bank as before stated, obtaining the surrender of the policies when Frad himself had no equity in them. They then ceased to exist as contracts and any tenders of premiums upon them thereafter were justifiably refused.

■ Moreover, there is another defense to this action upon which the appellant relies and which was apparently ignored below. Unless there is a right to reinstatement as of the time the policies were surrendered, they never matured upon Frad's later death. Any right to reinstatement as of the surrender date was one had ·by him when he brought this last suit. He had defrauded the insurer and while keeping the fruits of his fraud sought the aid of a court of equity to have the poli-

cies reinstated. It is a fundamental rule that one who comes into equity must do so with clean hands. Bein v. Heath, 6 How. 228, 47 U.S. 228, 247, 12 L.Ed. 416; Wheeler v. Sage, 1 Wall. 518, 68 U.S. 518, 17 L.Ed. 646; Primeau v. Granfield, 2 Cir., 193 F. 911; Prince Mfg. Co. v. Prince's Metallic Paint Co., 135 N.Y. 24, 31 N.E. 990, 17 L.R.A. 129. Nor does the beneficiary under the policies, who is the substituted plaintiff, stand differently. She knew of her husband's fraud upon the insurance company, received some of the disability checks which were fraudulently obtained, and used the proceeds after depositing the checks in a joint account she maintained with her husband.

Judgment reversed and complaint dismissed.