**Donald VELLA, Plaintiff–Appellant,**

**v.**

**The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES and The Equitable Group and Life Insurance Co., Defendants–Appellees.**

**No. 1241, Docket 89–7234.**

United States Court of Appeals, Second Circuit.

Argued June 7, 1989.

Decided Oct. 2, 1989.

Patrick F. Foley, New York City (McCormick Dunne & Foley, of counsel), for plaintiff-appellant.

Michael W. Brody, New York City (John P. Mangan, of counsel) for defendants-appellees.

Before FEINBERG and KEARSE, Circuit Judges, and BARTELS, Senior District Judge.[*]

BARTELS, Senior District Judge:

In this diversity action plaintiff-appellant Donald Vella ("Vella") seeks to recover for breach of contract under a disability policy issued by defendants-appellees, the Equitable Life Assurance Society of the United States and the Equitable Group and Life Insurance Company ("Equitable"). The policy provided for the payment of $4,000 a month income in the event Vella experienced a health disability which caused him to lose his employment. Vella incurred such a disability through a hearing impairment and instituted this suit after Equitable refused to pay, in which suit Equitable counterclaimed for rescission alleging that Vella made a material misrepresentation in his application for the policy. The district court agreed with Equitable and held that it had the right to rescind. We find that Vella made no misrepresentation, and therefore reverse.

*Background*

From October 31, 1980, to September 13, 1985, Vella, an international financial instruments broker, consulted his personal physician, Dr. Anthony Caccese, some eight times. He complained variously of chest pain, pain in his left arm, dizziness, lightheadedness, and headache. Dr. Caccese diagnosed nothing more than common anxiety, and repeatedly told Vella that nothing was wrong with him, that "he was fine," and that he should "go home and forget it." Accordingly, the doctor prescribed no course of treatment. Sometime later in September of 1985, Vella consulted Dr. Caccese for a common cold. Again, no treatment was prescribed.

In October, 1985, Vella filled out a medical history questionnaire in connection with an application for a "special occupational disability" insurance policy from Equitable. The policy is so named because it provided that Equitable was to become liable should Vella be medically disabled from performing the particular job he held as financial instruments broker. Equitable approved Vella's application, and physically attached a copy of the application and questionnaire to the policy it issued.

In April of 1986 Vella's hearing became impaired due to a disorder known as "sensori-neural deficit." The hearing specialist who diagnosed Vella's condition advised

him that the condition would worsen if Vella remained in a noisy environment. As Vella's job in the "trading pit" subjected him to frequent use of telephones (sometimes two at a time), speakerphones, and much cross-office shouting, he ceased work almost immediately. After Vella filed a timely disability claim, Equitable refused to pay alleging that Vella had misrepresented his medical history in the insurance application questionnaire.

In his application for the policy, Vella answered the pertinent questions as follows:

2. a. Name and address of personal physician (or medical facility used instead) (If none, so state).

*Dr. Caccese—71st & Ridge Blvd., Brooklyn, N.Y.*

b. Date and reason last consulted if within the last 5 years:

*9/85 common cold*

c. What treatment was given or recommended? (if none so state):

*NONE*

3. Has Proposed Insured ever been treated for or ever had any known indication of:

(Circle items that apply)

\*     \*     \*

|  | Yes | No |
|---|---|---|
| b. Dizziness, fainting, convulsions, paralysis or stroke, psychiatric, psychological or emotional problem or disturbance, mental or nervous, disease or disorder? | | /x/ |

\*     \*     \*

|  | Yes | No |
|---|---|---|
| d. Chest pain, palpitation, high blood pressure, rheumatic fever, heart murmur, heart attack, or other disease or disorder of the heart or blood vessels? | | /x/ |

\*     \*     \*

6. Other than as stated in answers to Questions 2–5,

|  | Yes | No |
|---|---|---|
| has Proposed Insured within the last 5 years: | | |
| a. Consulted or been examined or treated by any physician or practitioner? | | /x/ |
| b. Had any illness, injury or surgery? | | /x/ |
| c. Been a patient in or been examined or treated at a hospital, clinic, sanitorium, or other medical facility? | | /x/ |
| d. Had electrocardiogram, X-ray, or other diagnostic test? | /x/ | |

In explanation of his answer to question 6.d., Vella wrote, "6 D. 1983 Routine Physical EKG, Blood, Neg. Results Personal Physician."

Equitable asserted that the answers to 3.b. and d. and 6.a. and b. were misrepresentations, claiming that Vella had been "treated for" or had "indications of" the items listed and that he had consulted Dr. Caccese within the last five years for disorders other than a common cold. Accordingly, it refused to pay.

During the bench trial the district court found that Vella was disabled within the meaning of the policy, and further found that, assuming Vella had made a misrepresentation by failing to disclose his "anxiety" diagnosis, Equitable would have issued a policy to Vella even if it had known of this condition. The court added that such a policy would merely have excluded "anxiety" from coverage but would have been issued for the same premium amount, and reasoned that Equitable was therefore not entitled to rescission.\*\*

Subsequently, however, this Court delivered a decision in *Mutual Benefit Ins. Co. v. JMR Electronics Corp.*, 848 F.2d 30, 34 (2d Cir.1988), where we held that under New York law:

If a fact is material to the risk, the insurer may avoid a policy if that fact was misrepresented in an application for that policy whether or not the parties

---

\*\* Judge Sprizzo did, however, reform the policy based on mutual mistake because Vella had other insurance coverage of which neither he nor Equitable was aware at the time the present insurance policy was issued. Vella's recovery

was reduced accordingly. The reformation of the policy and the district court's finding that Vella is disabled within the terms of the policy are not before us on appeal.

might have agreed to some other contractual arrangement had the critical fact been disclosed.

In view of the *Mutual Benefit* opinion, the district court in this case granted reargument and, upon reargument, reversed its previous decision and effectively granted rescission by dismissing Vella's suit on the merits.

### Discussion

The question before this court is whether Vella made a misrepresentation in answering the above questions as to his medical history. To make our determination we must refer to the statutes and case law of New York.

Under § 3204 of the New York Insurance Law, statements made on an insurance application by a prospective insured are deemed representations. N.Y.Ins.Law § 3204(c) (McKinney 1985). By physically attaching the application to the subsequently issued policy, insurance companies are authorized to make the application part and parcel of their contract with the insured. *Id.* at § 3204(a)(1). Section 3105 of the New York Insurance Law provides that "[n]o misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material," N.Y.Ins.Law § 3105(b), and defines a "misrepresentation" as a false "statement as to past or present fact, made to the insurer by ... the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." *Id.* at 3105(a). The section further provides that "[n]o misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract." *Id.* at 3105(b).

As *Mutual Benefit* stated, and as the district court recognized on reargument, New York courts have held that, where there has been a misrepresentation by an insured, the insurance company can avoid liability on the policy by showing that had it known the truth it would not have issued the exact same policy it did issue. *See,*

*e.g., Geer v. Union Mut. Life Ins. Co.,* 273 N.Y. 261, 269, 7 N.E.2d 125, 128 (1937); *L. Smirlock Realty Corp. v. Title Guarantee Co.,* 70 A.D.2d 455, 462, 421 N.Y.S.2d 232, 237 (2d Dept.1979), *modified on other grounds,* 52 N.Y.2d 179, 418 N.E.2d 650, 437 N.Y.S.2d 57 (1981); *Barrett v. State Mut. Life Assur. Co.,* 58 A.D.2d 320, 323, 396 N.Y.S.2d 848, 851 (1st Dept.1977), *aff'd,* 44 N.Y.2d 872, 378 N.E.2d 1047, 407 N.Y.S.2d 478 (1978), *cert. denied,* 440 U.S. 912, 99 S.Ct. 1226, 59 L.Ed.2d 461 (1979); *Cohen v. Mutual Benefit Life Ins. Co.,* 638 F.Supp. 695, 697 (E.D.N.Y.1986). So long as a misrepresentation is material, it is no defense to an action for rescission that the misrepresentation was innocently made. *Process Plants Corp. v. Beneficial National Life Ins. Co.,* 53 A.D.2d 214, 216, 385 N.Y.S.2d 308, 310 (1st Dept.1976), *aff'd mem.,* 42 N.Y.2d 928, 366 N.E.2d 1361, 397 N.Y.S.2d 1007 (1977).

Since Equitable followed N.Y.Ins.Law § 3204 and incorporated the application into the insurance contract by physically attaching it to the policy, we employ the ordinary rules of construing contracts in determining whether Vella made a misrepresentation within the definition of N.Y. Ins.Law § 3105. *See Massachusetts Mut. Life Ins. Co. v. Lord,* 18 A.D.2d 69, 70–71, 238 N.Y.S.2d 222, 224 (1st Dept.) (application for insurance, insurance policy, and any supplemental rider to be construed as a single instrument), *aff'd,* 13 N.Y.2d 1096, 196 N.E.2d 266, 246 N.Y.S.2d 630 (1963).

Because insurance contracts are inevitably drafted by insurance companies, New York law construes insurance contracts in favor of the insured and resolves all ambiguities against the insurer. *United States Fidelity,* 67 N.Y.2d at 232, 492 N.E.2d at 1207, 501 N.Y.S.2d at 791; *Miller v. Continental Ins. Co.,* 40 N.Y.2d 675, 678, 358 N.E.2d 258, 260, 389 N.Y.S.2d 565, 567 (1975). *Cf. Dilleber v. Home Life Ins. Co.,* 69 N.Y. 256, 264 (1877) ("Conditions and provisos must be strictly construed against the insurers, because they have for their object to limit the scope and defeat the purpose of the principal contract; and as the insurer prepares the contract and furnishes the language used, any ambi-

guity in the contract must be taken most strongly against him."). This latter rule applies to questions on insurance applications where the insurance company seeks to avoid liability by citing the answers thereto as misrepresentations. *Dineen v. General Accident Ins. Co. of Phila.*, 126 App.Div. 167, 169, 110 N.Y.S. 344, 346 (4th Dept.1908) (citing *Dilleber*, 69 N.Y. at 262 *et seq.*). The questions "must be so plain and intelligible that any applicant can readily comprehend them. If any ambiguity exists, the construction will obtain most favorable to the insured." *Id. See also Halpin v. Insurance Co. of N. America*, 120 N.Y. 73, 78, 23 N.E. 989, 990 (1890).

The district court was correct in finding that Vella did not make a misrepresentation as to question 3 regarding whether he had been "treated for" any of the listed disorders. Although Vella complained of chest pains and dizziness, the doctor did not "treat" him for these problems. In fact, the doctor told him that he was not really suffering from these problems but was, instead, experiencing nothing more than anxiety. Furthermore, neither at trial nor on appeal did Equitable claim that the trial court erred in not finding a misrepresentation concerning Vella's answer of no "known indication" of chest pains or dizziness. We therefore do not address this issue. Finally, we agree with the district court that, in the context of this case, common "anxiety" is not a "psychiatric, psychological or emotional problem or disturbance, mental or nervous, disease or disorder" since the doctor repeatedly told Vella there was nothing wrong with him. For the same reason, the district court correctly found that Vella did not misrepresent himself in question *6.b.*—the doctor told him he was fine, thus Vella was correct in saying he had had no illness.

Equitable claims, however, that Vella's misrepresentation was "the non-disclosure of numerous consultations with his personal physician, Anthony Caccese, M.D., who repeatedly diagnosed anxiety." (Appellee's Brief at 4) Our remaining inquiry, then, is whether Vella answered question *6.a.* accu-

rately in view of its cross-reference to the answer to question 2.a.

We find that question 6 as a whole is ambiguous. Taking the language of the question according to its normal usage, *Orient v. Equitable Life Assur. Soc'y of the United States*, 268 App.Div. 299, 303, 51 N.Y.S.2d 115, 118 (2d Dept.), *modified on other grounds*, 268 App.Div. 1005, 52 N.Y.S.2d 787 (1944), the question is readily susceptible to different meanings in each subsection. *See Garza v. Marine Transport Lines, Inc.*, 861 F.2d 23, 27 (2d Cir.1988) (phrase is ambiguous where a reasonably intelligent person who has examined context of entire agreement could find more than one meaning). For example, in 6.a., Equitable could have been asking Vella if he had consulted a doctor for any reason "other than" that already reported in answering questions 2–5 (i.e., for a common cold). Or, Equitable could have been asking Vella if he had seen any physician "other than" the doctor already revealed in answering questions 2–5 (i.e., Dr. Caccese). By contrast, in 6.b., "other than" could mean has the insured had any illness, injury, or surgery other than any illness or surgery disclosed in the answers to questions 2–5. In 6.c., "other than" could mean has the insured been a patient, or been examined or treated, other than any treatments and hospitalizations revealed in the answers to questions 2–5. And in 6.d., "other than" could mean has the insured had any electrocardiogram, X-ray, or other diagnostic test other than those disclosed in the answers to questions 2–5.

Under this interpretation of question 6, Vella honestly answered these subdivisions of question 6, including question 6.a. For example, Vella was asked if he had consulted any physician "other than" Dr. Caccese, and Vella answered, "No." This answer was true. Vella acted reasonably in assuming that the information sought in question 6.a. was whether he had consulted any physician *other than* the one disclosed in response to question 2.a., i.e., Dr. Caccese. Vella never stated that he had not consulted Dr. Caccese for reasons other than a common cold; he simply was never asked about anything but his last visit to

Dr. Caccese. *Cf. Dilleber*, 69 N.Y. at 262 ("It was not said that [the applicant] had had no other physician, and if a fuller and more precise answer was desired, the [insurance company] should have exacted it. [The answer] was full and complete so far as it went."). Vella's answers to the other subdivisions were similarly consistent. We conclude that he made no misrepresentations and therefore the rule explained by *Mutual Benefit* is inapplicable.

An applicant for insurance is under no duty to volunteer information where no question plainly and directly requires it to be furnished, *Orent*, 268 A.D. at 303, 51 N.Y.S.2d at 118; *Burritt v. Saratoga County Mut. Fire Ins. Co.*, 5 Hill 188, 192 (1843), *reprinted in* 16 N.Y.Comm.Law Reports 97, 99 (1885), and, since Equitable asked Vella only about the last time he had consulted a physician, Vella was entitled to suppose that Equitable considered previous consultations with his doctor to be irrelevant to assessing the risk in issuing the policy. *See Browning v. Home Ins. Co. of Columbus, Ohio*, 71 N.Y. 508, 512 (1877). *Cf. Hare & Chase, Inc. v. National Surety Co.*, 60 F.2d 909, 911 (2d Cir.1932).

### Conclusion

New York law requires ambiguities in insurance contracts to be construed in favor of the insured. Here an application for insurance, made part of the contract by the insurance company, asked the insured an ambiguous question. Construing that question in a light most favorable to the insured we find that the insured made no misrepresentation in his answer. We therefore reverse and remand to the district court for entry of judgment in favor of the plaintiff.

